UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RYO NAKAMURA, individually and on behalf
of all others similarly situated,

                              Plaintiff,                          18-cv-2213 (PKC)

           -against-                               OPINION
                                                AND ORDER

BRF S.A., PEDRO DE ANDRADE FARIA,
JOSE ANTONIO DO PRADO FAY, CLAUDIO
GALEAZZI, JOSE ALEXANDRE CARNEIRO
BORGES, AUGUSTO RIBEIRO JUNIOR,
LEOPOLDO VIRIATO SABOYA and HELIO
RUBENS MENDES DOS SANTOS JUNIOR,

                             Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

          The Complaint asserts securities fraud claims on behalf of a proposed class of

shareholders.  Two motions for appointment as lead plaintiff have been filed by purported class

members.  One motion is brought by the City of Birmingham Retirement and Relief System

("Birmingham"), a public pension fund that purchased and sold American Depository Receipts

("ADRs") in defendant BRF S.A. ("BRF") during the class period.  It has made a showing that it

incurred $749,857.61 in losses on those transactions.

          A separate motion is filed by ARS (BVI) Holding Ltd. ("ARS") and Platinum

International Wealth Corp. ("Platinum") (collectively, the "Soares Group"), which are described

as two Virgin Islands holding companies.  Arlindo R. Soares is identified as the sole director and

investor in ARS, and his brother, Nelson R. Soares, is identified as the sole director and investor

in Platinum.  The Soares Group claims an aggregate, combined loss of $879,276.97 on its

transactions in BRF's ADRS, consisting of $631,026.97 lost by Platinum and $248,250 lost by ARS.

For the reasons that will be explained, the Court concludes that Birmingham has shown that it is best positioned to act as lead plaintiff and protect the interests of the class. The Soares Group, by contrast, has not satisfied its burden of showing that the aggregation of claims brought by two separate plaintiffs is appropriate in this case.

Birmingham's motion for appointment as lead plaintiff is therefore granted, and the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") is appointed to act as lead counsel.

BACKGROUND.

This case is brought as a putative class action asserting claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The proposed class consists of all persons who purchased or otherwise acquired shares of BRF between the dates of April 4, 2013 and March 2, 2018.

BRF is alleged to be the world's largest poultry exporter, with its headquarters in Brazil. Its ADRs trade on the New York Stock Exchange.

The Complaint alleges that defendants materially misrepresented and omitted that BRF had bribed public officials in order to undermine food safety inspections and conceal unsanitary conditions at BRF's meatpacking facilities. The Complaint alleges that defendants' misstatements and omissions artificially inflated BRF's stock price, which dropped when investors learned the truth about company practices and the increased risk of regulatory enforcement and prosecution in light of defendants' alleged scheme.

Five purported class members initially moved for appointment as lead counsel. After the moving papers were filed, three of the movants – Steven Trabish, John Smolen and a group consisting of BPRINT Investments LLC, Julio Almeida and Ryo Nakamura – withdrew their motions.  (Docket # 26, 28, 31.)  The only remaining motions to be decided are those filed by Birmingham and the Soares Group.  (Docket # 20, 23.)  Defendant BRF takes no position on the motions.  (Docket # 27.)

THE PSLRA'S LEAD PLAINTIFF PROVISIONS.

The Private Securities Litigation Act of 1995 (the "PSLRA") establishes a procedure for the appointment of a lead plaintiff.  15 U.S.C. § 78u-4(a)(3).  The lead plaintiff requirement is intended "to prevent lawyer-driven litigation" and ensure that plaintiffs with expertise in the securities markets control the litigation, as opposed to lawyers.  In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (Cedarbaum, J.).

The PSLRA provides that the district court "shall" appoint a lead plaintiff that it "determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA "requires a district court to appoint a person or persons to serve as lead plaintiff before proceeding with the adjudication of a private suit under the federal securities laws.  Two objective factors inform the district court's appointment decision: the plaintiffs' respective financial stakes in the relief sought by the class, and their ability to satisfy the requirements of Rule 23."  Hevesi v. Citigroup Inc., 366 F.3d 70, 81 (2d Cir. 2004) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  Financial loss is the most important factor in weighing a plaintiff's overall "financial stakes."  See Varghese v. China Shenghuo Pharmaceutical Holdings, Inc., 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008) (Marrero, J.).

A court also must consider the rebuttal evidence, if any, submitted by a member of the purported class that the presumptive lead plaintiff will not fairly and adequately protect the class's interests, or that the plaintiff is subject to unique defenses that render it incapable of adequately representing the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

DISCUSSION.

A.  The Soares Group's Motion for Appointment as Lead Plaintiff Is Denied.

The Soares Group asserts that it has lost $879,276.97 as a result of defendants' alleged fraud, and has submitted charts reflecting transactions in BRF shares.  (Stocker Dec. Exs. A, B.)  ARS purchased 90,000 shares during the class period and Platinum purchased 316,000 shares.  (Stocker Dec. Ex. B.)  It appears that each entity has retained those shares.  (See id.)  ARS asserts that it has lost $248,250 as a result of defendants' alleged fraud, and Platinum claims that it has lost $631,026.97.  (Stocker Dec. Ex. B.)  The Soares Group states that it satisfies the criteria of Rule 23 because its losses are typical of members of the proposed class and that its interests are aligned with the class in seeking maximum recovery for any losses incurred.  (Docket # 21 at 7-8.)

The text of the PSLRA provides that a "person or group of persons" may move for appointment as lead plaintiff.  15 U.S.C. § 78u-4(3)(b)(iii)(I).  The statute does not set criteria for what may properly constitute a "group."  See Varghese, 589 F. Supp. 2d at 392.  Courts have recognized the grouping of plaintiffs "on a case-by-case basis, if such a grouping would best serve the class."  Id.  "Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group

members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." Id.

A proposed plaintiff group has the burden of showing that aggregation is appropriate. Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM Inc., 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015) (Wood, J.); accord Varghese, 589 F. Supp. 3d at 392. "The overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers." Int'l Union of Operating Engineers, 2015 WL 7018024, at *2. A plaintiff group should not be made lead plaintiff if it offers no evidentiary basis for aggregation or was "assembled as makeshift by attorneys" in order to claim the greatest financial interest. Varghese, 589 F. Supp. 2d at 392-93 (collecting cases); see also In re Tarragon Corp. Sec. Litig., 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) ("there must be some evidence that the members of the group will act collectively and separately from their lawyers.").

The Soares Group's moving papers did not include any submission on the appropriateness of grouping the two Soares entities – each separately owned and controlled by a different brother – together as a lead plaintiff. In its response papers, it filed a joint declaration of Arlindo and Nelson Soares. (Docket # 33-5.) Arlindo Soares states that he is the sole director of ARS, a holding company based in the Virgin Islands. (Joint Dec. ¶ 2.) Nelson Soares states that he is the sole director of Platinum, also a Virgin islands-based holding company. (Joint Dec. ¶ 3.) Both state that they have agreed to exercise joint decision-making authority as lead plaintiff and have "established procedures" for overseeing the litigation and communicating between one another and with counsel. (Joint Dec. ¶ 9.) They state that they are motivated to jointly act as lead plaintiffs based on their "shared beliefs" in preventing securities fraud, that they understand

that a lead plaintiff must function independently of the attorneys and that they will seek the largest possible recovery.  (Joint Dec. ¶¶ 4-8.)

Their assertions do not satisfy the threshold requirements that are weighed in the grouping of proposed lead plaintiffs.  The joint declaration identifies Arlindo and Nelson Soares as brothers with "a long history of cooperation in business matters . . . ."  (Joint Dec. ¶ 1.)  The Court affords some weight to the brothers' familial relationship and the likelihood that they will act in unison.  While their family ties are certainly evidence of a "pre-litigation relationship between group members," they offer no specifics as to their history of business collaboration and how it positions them to advance the interests of the class.

Second, the declaration is similarly vague as to their involvement in the litigation to date.  The declaration states only that they have reviewed the Complaint's allegations, and, "after consulting with our counsel," thereafter "approved" the filing of this motion.  (Joint Dec. ¶ 5.)  Their "involvement . . . in the litigation thus far" appears to be minimal.  Varghese, 589 F. Supp. 2d at 392.

Third, the "plans for cooperation" described in the declaration are vague and conclusory.  The joint declaration states that they will "oversee their counsel," "exercise joint decision-making," "actively monitor the activities of their counsel," and that they "have established procedures for overseeing the progress of the litigation and communicating regularly between ourselves and our counsel."  (Joint Dec. ¶¶ 8-9.)  They state that they will review and discuss "significant case filings with our counsel through joint conference calls" and take "other measures" to advance the best interests of the class.  (Joint Dec. ¶ 9.)  Courts have generally rejected such vague assurances as "insufficient proof that a group of unrelated investors will be able to effectively manage the litigation."  Int'l Union of Operating Engineers, 2015 WL

7018024, at *4 (intent to confer via phone and e-mail was insufficient evidence of planned cooperation); accord Micholle v. Ophthotech Corp., 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (plaintiff group provided only "'conclusory assurances' that call into question whether it can manage this litigation effectively.") (Broderick, J.).

Fourth, the joint declaration has not made a satisfactory showing as to the sophistication of the group's proposed members.  It does not explain the declarants' business expertise, educational background, management experience or history of monitoring or participating in litigation.

Fifth, the joint declaration does not explain "whether the members chose outside counsel, and not vice versa."  Varghese, 589 F. Supp. 2d at 392.  This factor goes toward the PSLRA's goal of ensuring that shareholders, and not just plaintiffs' counsel, plays an active role in driving the litigation.  The silence on this point raises the possibility that the Soares group's motion was "assembled as makeshift by attorneys" in order to claim the greatest financial interest in the outcome of the case.  Id. at 392-93 (collecting cases); see also In re Donnkenny, 171 F.R.D. at 158 (in enacting the PSLRA, "Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff.").

For the foregoing reasons, the Court concludes that the Soares Group has not satisfied its burden of showing that is appropriate to aggregate the two separate holding companies as a single lead plaintiff.  Its motion for appointment as lead plaintiff is therefore denied.

B.  Birmingham's Motion for Appointment as Lead Plaintiff Is Granted.

Birmingham asserts that it purchased 145,673 BRF ADRs and has lost $749,857 as a result of defendants' alleged fraud.  It has submitted a chart reflecting that during the class

period, Birmingham purchased BRF's ADRs at a price of $1,862,231.21, and sold them during

the class period for proceeds of $1,112,373.60, reflecting total losses of $749,857.61.  (Rosenfeld

Dec. Ex. C.)  Birmingham states that it satisfies the criteria of Rule 23 because its losses are

typical of members of the proposed class and that his interests are aligned with the class in

seeking maximum recovery for any losses incurred.  (Docket # 24 at 5-6.)

Birmingham has submitted evidence to support its assertion that it is the

shareholder who incurred the largest amount of loss as a result of defendants' alleged fraud.  It

has submitted trading data that reflects total losses of $749,857.61 in its transactions of BRF

ADRs.  (Rosenfeld Dec. Ex. C.)  The amount of financial loss "is the most important element" in

deciding which proposed plaintiff has the largest financial interest in pursuing a claim on behalf

of the class.  Varghese, 589 F. Supp. 2d at 395.

Birmingham has also made a provisional showing that it can satisfy the typicality

and adequacy requirements of Rule 23.  At this stage, only a preliminary showing of typicality

and adequacy is required.  See, e.g., In re LightInTheBox Holding Co., Ltd. Sec. Litig., 2013 WL

6145114, at *4 (S.D.N.Y. Nov. 21, 2013).  Birmingham's claims would be typical of the class

because they assert violations of section 10(b) and Rule 10b-5 based on defendants' allegedly

false and misleading statements.  Rule 23(a)(3).  It has preliminarily shown that it would fairly

and adequately represent the proposed class because it has no known conflict with the class

members, has a sufficient interest in the outcome to insure vigorous advocacy and has selected

qualified and experienced counsel.  Rule 23(a)(4).

The Soares Group urges that Birmingham is not an appropriate lead plaintiff

because it falls under the PSLRA's "professional plaintiff" restriction, 15 U.S.C. § 78u-

4(a)(3)(B)(vi).  The PSLRA states: "Except as the court may otherwise permit, consistent with

the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." Id.  However, it appears to be undisputed that, during the last three years, Birmingham has been appointed lead plaintiff in four class actions, which falls short of the PSLRA's professional plaintiff restriction.  (Docket # 32 at 8; Docket # 34 at 7.)  That it may have unsuccessfully moved for appointment as lead plaintiff in other actions is not a barrier under the statute.

Even if Birmingham fell within the professional plaintiff restriction, the Court would be inclined to grant its motion, given both its status as an institutional investor and the presumptively most adequate plaintiff.  "[T]he provision of the PSLRA restricting the use of professional plaintiffs was largely directed at private individuals, and courts have routinely waived the restriction in the case of qualified institutional investors." Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) (Rakoff, J.) (collecting cases).

Birmingham's motion for appointment as lead plaintiff is therefore granted.

C.  Robbins Geller Is Appointed Lead Counsel.

The Court grants Birmingham's application to appoint the law firm of Robbins Geller as lead counsel.  Under the PSLRA, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court has discretion to reject the choice of counsel when it is necessary to protect the best interests of the class.  Int'l Union of Operating Engineers, 2015 WL 7018024, at *5.  In deciding whether to approve proposed lead counsel, courts look principally to counsel's experience.  Id.

Robbins Geller has extensive experience in litigating shareholder class actions, and has been lead counsel in actions that have settled for hundreds of millions of dollars.  It has the necessary experience to act as lead counsel, and its retention on behalf of the class in this case is approved.

CONCLUSION.

Birmingham's motion for appointment as lead plaintiff is GRANTED and the Soares Group's motion is DENIED.  The Clerk is directed to terminate the motions and the since-withdrawn motions of the other proposed lead plaintiffs.  (Docket # 12, 15, 17, 20, 23.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 2, 2018

- 10 -