UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re BRF S.A. SECURITIES LITIGATION

This Document Relates To:

    ALL ACTIONS.

———————————————————— x

:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:18-cv-02213-PKC

<u>CLASS ACTION</u>

MEMORANDUM OF LAW IN SUPPORT
OF LEAD PLAINTIFF'S MOTION FOR AN
ORDER DIRECTING SERVICE OF
SUMMONS AND AMENDED COMPLAINT
BY ALTERNATE MEANS ON NON-U.S.
DEFENDANTS

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF FACTS ....................................................................................................1

    A.    Background .............................................................................................................1

    B.    Procedural History ................................................................................................3

    C.    The Instant Motion................................................................................................3

II.   LEGAL AUTHORITY ......................................................................................................5

    A.    Lead Plaintiff Is Not Required to Attempt Service Through Diplomatic
            Channels Before Seeking Alternate Service Under Rule 4(f)(3)............................5

    B.    Alternative Service in Brazil Is Not Prohibited by the I-A Convention or
            Any Other International Agreement .......................................................................8

    C.    Service Upon Defendant Luz Through BRF's Domestic Counsel or
            Registered Agent Is Proper and Comports with Due Process...............................11

            1.    Lorival Luz Is a Key BRF Executive........................................................11

            2.    Due Process Permits Service of Process on a Corporate Officer
                    Through the Corporation's Domestic Counsel of Record ........................12

            3.    Service on Defendant Luz Through Skadden Is Proper Because
                    Luz Has Actual Knowledge of This Litigation.........................................14

    D.    Service On Defendants Pedro Faria, Helio Rubens Mendes, and Abilio
            Diniz Through Their Brazilian Counsel Comports with Due Process..................16

    E.    Service on a Corporate Officer or Director by Registered Mail to the
            Corporation Comports with Due Process Because the Corporation Will
            Inform Its Officers and/or Directors About the Lawsuit .....................................19

    F.    BRF Lacks Standing to Contest This Motion ......................................................20

III.   CONCLUSION.................................................................................................................21

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ackermann v. Levine*,
 788 F.2d 830 (2d Cir. 1986) .................................................................................19

*Advanced Aerofoil Techs., AG v. Todaro*,
 No. 11-cv-9505 (ALC) (DCF), 2012 WL 299959
 (S.D.N.Y. Jan. 31, 2012) ..........................................................................................7

*Altos Hornos de Mex., S.A.B. de C.V. v. Rock Res. Ltd.*,
 No. 15-cv-1671 (JSR), 2015 WL 6437384
 (S.D.N.Y. Oct. 19, 2015) ...........................................................................................9

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
 No. 10-cv-1853(PGG)(JCF), 2012 WL 4801452
 (S.D.N.Y. Oct. 5, 2012) .............................................................................................9

*Amto, LLC v. Bedford Asset Mgm't, LLC*,
 No. 14-cv-9913, 2015 WL 3457452
 (S.D.N.Y. June 1, 2015) ...........................................................................................18

*Atlantica Holdings, Inc.*,
 No. 13-cv-5790 (JMF), 2014 WL 12778844
 (S.D.N.Y. Mar. 31, 2014) ........................................................................................14

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
 No. 12-cv-9258 (ALC) (MHD), 2014 WL 1331046
 (S.D.N.Y. Mar. 31, 2014) ....................................................................................7, 18

*Brown v. China Integrated Energy, Inc.*,
 285 F.R.D. 560 (C.D. Cal. 2012) ......................................................................12, 19

*Commodity Futures Trading Comm'n v. Nahas*,
 738 F.2d 487 (D.C. Cir. 1984) ................................................................................10

*Ehrenfeld v. Salim a Bin Mahfouz*,
 No. 04-CV-9641 (RCC), 2005 WL 696769
 (S.D.N.Y. Mar. 23, 2005) ........................................................................................18

*Elsevier, Inc. v. Siew Yee Chew*,
 287 F. Supp. 3d 374 (S.D.N.Y. 2018) .......................................................................6

*Farrell v. Burke*,
 449 F.3d 470 (2d Cir. 2006) ....................................................................................20

**Page**

*In re China Educ. Alliance, Inc. Sec. Litig.*,
No. 10-cv-9239 (CAS), 2011 WL 6846214
(C.D. Cal. Dec. 29, 2011) ...................................................................................12

*In re GLG Life Tech Corp. Sec. Litig.*,
287 F.R.D. 262 (S.D.N.Y. 2012) ................................................................... *passim*

*In re Petrobras Sec. Litig.*,
No. 14-cv-9662 (JSR), 2015 WL 10846515
(S.D.N.Y. Nov. 2, 2015) ...............................................................................18, 20

*In re Sinohub, Inc. Sec. Litig.*,
No. 12-cv-8478 (WHP), 2013 WL 4734902
(Aug. 14, 2013) ................................................................................. 6-7, 9, 14, 16

*J.B. Custom, Inc. v. Amadeo Rossi, S.A.*,
No. 10-cv-326, 2011 WL 2199704
(N.D. Ind. June 6, 2011) ....................................................................................9

*KPN B.V. v. Corcyra D.O.O.*,
No. 08-cv-1549 (JGK), 2009 WL 690119
(S.D.N.Y. Mar. 16, 2009) ...................................................................................7

*Kreimerman v. Casa Veerkamp, S.A. de C.V.*,
22 F.3d 634 (5th Cir. 1994) ............................................................................ 8-9

*Liberty Media Holdings, LLC v. Vinigay.com*,
No. 11-cv-0280 (PHX) (LOA), 2011 WL 810250
(D. Ariz. Mar. 3, 2011) ......................................................................................9

*Luessenhop v. Clinton Cty.*,
466 F.3d 259 (2d Cir. 2006)..............................................................................11

*Lyman Morse Boatbuilding Co., Inc. v. Lee*,
No. 10-cv-337 (DBH), 2011 WL 52509
(D. Me. Jan. 6, 2011) ...............................................................................7, 9, 17

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
265 F.R.D. 106 (S.D.N.Y. 2010) ......................................................................20

*Mayatextil, S.A. v. Liztex U.S.A., Inc.*,
No. 92-cv-4528 (SS), 1994 WL 198696
(S.D.N.Y. May 19, 1994).................................................................................8, 9

iii

**Page**

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
No. 12-cv-5754 (LAK) (AJP), 2013 WL 6799973
(S.D.N.Y. Dec. 20, 2013)..................................................................................................6, 8

*Paiz v. Castellanos*,
No. 06-cv-22046, 2006 WL 2578807
(S.D. Fla. Aug. 28, 2006).........................................................................................................9

*Rana v. Islam*,
305 F.R.D. 53 (S.D.N.Y. 2015) ........................................................................................10, 18

*Rio Properties, Inc. v. Rio International Interlink*,
284 F.3d 1007 (9th Cir. 2002) ....................................................................................6, 10, 19

*Rose v. Deer Consumer Prods., Inc.*,
No 11-cv-03701 (DMG), 2011 WL 6951969
(C.D. Cal. Dec. 29, 2011) ..............................................................................................12, 13

*Russell Brands, LLC v. GVD Int'l Trading, SA*,
282 F.R.D. 21 (D. Mass. 2012)...........................................................................8, 9, 10, 19

*Sayles v. Pac. Eng'rs & Constructors, Ltd.*,
No. 08-cv-676S, 2009 WL 791332
(W.D.N.Y. Mar. 23, 2009)......................................................................................................20

*SEC v. Anticevic*,
No. 05-cv-6991 (KMW), 2009 WL 361739
(S.D.N.Y. Feb. 13, 2009) .......................................................................................................7

*SEC v. Lines*,
No. 07-cv-11387 (DLC), 2009 WL 2431976
(S.D.N.Y. Aug. 7, 2009) ...................................................................................................19, 20

*Stream SICAV v. Wang*,
989 F. Supp. 2d 264 (S.D.N.Y. 2013)........................................................................6, 12, 19

*TracFone Wireless, Inc. v. Washington*,
290 F.R.D. 686 (M.D. Fla. 2013)........................................................................................19

*United States v. Besneli*,
No. 14-cv-7339 (JFK), 2015 WL 4755533
(S.D.N.Y. Aug. 12, 2015) ........................................................................................................5

**Page**

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)..................................................................................................9

*Walsh v. Denis*,
    No. 16-cv-0945 (AWT), 2017 WL 819957
    (D. Conn. Mar. 2, 2017)..............................................................9, 10, 11, 18

*Zhang v. Baidu.com Inc.*,
    293 F.R.D. 508 (2013) ......................................................................................6, 18

## STATUTES, RULES AND REGULATIONS

15 U.S.C.A.
    §78u-4(a)(3) ........................................................................................................3

28 U.S.C.
    §1781......................................................................................................................4

Federal Rules of Civil Procedure
    Rule 4(f) ....................................................................................................6, 9
    Rule 4(f)(1) ..............................................................................................6, 7, 10
    Rule 4(f)(1)-(2) ......................................................................................................6
    Rule 4(f)(2) ............................................................................................................6
    Rule 4(f)(3) .................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ....................................................3, 7

Lead Plaintiff City of Birmingham Retirement and Relief System ("Lead Plaintiff" or "Birmingham") respectfully submits this memorandum of law in support of its motion for an order, pursuant to Federal Rule of Civil Procedure 4(f)(3), directing alternate service of the Summons and the Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Amended Complaint") in this action on non-U.S. defendants Lorival Nogueira Luz  Jr. ("Luz"), Claudio Galeazzi ("Galeazzi"), Pedro de Andrade Faria ("Pedro Faria"), Leopoldo Viriato Saboya ("Saboya"), Augusto Ribeiro Júnior ("Ribeiro"), José André Carneiro Borges ("Borges"), Hélio Rubens Mendes dos Santos Júnior ("Helio Rubens Mendes"), Jose Antonio do Prado Fay ("Fay"), and Abilio dos Santos Diniz ("Abilio Diniz") (collectively, the "Individual Defendants").

## I.      STATEMENT OF FACTS

### A.      Background

This is a securities class action against BRF S.A. ("BRF" or the "Company"), the world's largest poultry exporter, and certain of its current and former executives for their alleged violations of the federal securities laws.  The Company's American Depositary Receipts ("ADRs") trade on the New York Stock Exchange under the ticker symbol BRFS.

The Amended Complaint alleges that throughout the Class Period, BRF routinely packaged and sold meat and poultry products that failed to meet health and sanitary standards and engaged in other illegal and unlawful conduct which rendered its Class Period statements materially false and misleading.  ¶¶83-346.[1]  This widespread fraud included numerous senior executives, as well as the

---

[1]   All "¶__" referenced are to the Amended Complaint (ECF No. 49).  "Rosenfeld Decl., ¶__" refers to the Declaration of David A. Rosenfeld in Support of Motion for Alternate Service, dated November 7, 2018, with exhibits thereto, submitted herewith.  "Myers Aff., ¶__" refers to the Affidavit of Diane Myers Regarding Service Via the Inter-American Convention on Letters Rogatory in Brazil (the "Myers Aff."), sworn to on October 23, 2018, submitted herewith.  "Tescari Decl., ¶__" refers to the Declaration of Renato Mantoanelli Tescari in Support of Plaintiff's Motion for An Order Directing Alternate Service, dated November 4, 2018, submitted herewith.

Company's top management, and involved, *inter alia*: (i) the payment of bribes to regulators and politicians to subvert inspections in order to conceal unsanitary practices at BRF's meatpacking facilities; (ii) the falsification of laboratory analyses and traceability reports; and (iii) the improper use of additives and chemicals in food products.  ¶¶1-3.

On March 17, 2017, the Brazilian Federal Police raided the facilities of dozens of meatpackers as part of a two-year criminal investigation codenamed "Operation Weak Flesh" (in Portuguese, *Operação Carne Fraca*) which found at least 40 cases of federal regulators accepting bribes in exchange for loosening regulations and helping food processors put adulterated food products in the marketplace.  ¶73.  The raids, which were authorized by Brazilian Federal Judge Marcos Josegrei da Silva in a decision spanning more than 300 pages (the "Carne Fraca Decision"), were carried out across seven Brazilian states, and involved 1,100 federal police officers, 194 search and seizure warrants, 77 driving license suspensions, 27 arrest warrants, and 11 temporary detention orders.  ¶74.  The Carne Fraca Decision revealed that BRF was a major player in what it described as a "staggering" web of corruption in Brazil's meatpacking industry.  ¶75.

On March 5, 2018, Brazilian Judge André Wasilewski Duszczak issued a decision authorizing a new round of raids in the third phase of Operation Weak Flesh, codenamed "Operation Trap" (in Portuguese, *Operação Trappa*) (the "Trappa Decision").  ¶80.  The raids were carried out across five Brazilian states, and involved 270 federal police officers, 21 health inspectors, 91 court orders, and 11 temporary arrest warrants.  *Id.*  The Trappa Decision described a vicious circle of corruption in which BRF fed adulterated poultry feed infected with salmonella to chickens.  BRF concealed the contamination using a web of corrupt laboratories, slaughtered the contaminated chickens on regular production lines, and packaged the final poultry products for domestic and international consumption.  ¶81.

Together, the Carne Fraca Decision and the Trappa Decision paint a picture of a company beset by corruption, with individuals throughout the organization, including those at the highest level of the Company, engaging in widespread, fraudulent, and illegal conduct.  ¶¶73-82.

### B.    Procedural History

This action was commenced by plaintiff Ryo Nakamura on March 12, 2018, seeking relief under the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of all purchasers of BRF ADRs from July 24, 2013 through February 24, 2017 (the "Class Period").  After the initial complaint was filed, this action was stayed to allow the lead plaintiff process of the Private Securities Litigation Reform Act of 1995 ("PSLRA") to run its course.  *See generally* 15 U.S.C.A. §78u-4(a)(3).  On July 2, 2018, the Court appointed Birmingham as lead plaintiff, and approved Birmingham's selection of Robbins Geller Rudman & Dowd LLP as lead counsel.  ECF No. 42. Lead Plaintiff filed its Amended Complaint on August 31, 2018 (ECF No. 49), and is scheduled to file its Second Amended Complaint by December 4, 2018.  ECF No. 60.[2]

By letter dated October 10, 2018, Lead Plaintiff requested leave to file a motion for an order directing service of the summons and amended complaint by alternate means.  ECF No. 59.  On October 16, 2018, the parties attended a conference with the court where the parties discussed, *among other things*, Lead Plaintiff's anticipated motion.  During the conference, counsel for the Company acknowledged that it had already been served and that the motion did not affect BRF.  At the conference, the Court granted Lead Plaintiff's request to file the instant motion.  ECF No. 60.

### C.    The Instant Motion

Since the filing of the initial complaint, service has been successfully completed upon BRF in the United States.  With the exception of Defendant Luz, the Individual Defendants are Brazilian

---

[2]    As used herein, the term "Amended Complaint" shall refer to the operative pleading on the date this motion is decided.

residents who are no longer employed by BRF and cannot be served in the same manner.  Although Lead Plaintiff requested that BRF's counsel of record in this action, Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), accept service on behalf of Luz, Skadden declined to do so, stating that it is not authorized to accept service.

Without the alternative service requested herein, Lead Plaintiff's only option will be to attempt to effect service extraterritorially on the Individual Defendants in Brazil through the Inter-American Convention on Letters Rogatory and Additional Protocol (the "I-A Convention"), a time-consuming, expensive, and challenging endeavor that is by no means guaranteed to be successful. *See* 14 I.L.M. 395 (1975) and 18 I.L.M. 1238 (1979) (reprinted following 28 U.S.C. §1781).  Indeed, Lead Plaintiff has consulted with a third-party service company to facilitate service through the I-A Convention, and has been informed that service in Brazil could take up to 18 months, if service there can be effected at all.  *See* Myers Aff., ¶7.

Under these circumstances, service of process by alternate means under Fed. R. Civ. P. 4(f)(3) is warranted so long as the proposed method of alternate service is not expressly prohibited by international agreement and otherwise gives the defendant sufficient notice of the lawsuit and time to object.  As set forth herein, the methods Lead Plaintiff proposes to effect service on the Individual Defendants satisfies these requirements.  Specifically, Lead Plaintiff requests leave to serve the Individual Defendants as follows:

- On Defendant Luz, the Company's former CFO and IRO, current COO, and rising CEO, through Skadden or through the Company's registered agent for service of process.

- On Defendants Helio Rubens Mendes and Pedro Faria, through their counsel of record in related criminal proceedings in Brazil;

- On Defendant Abilio Diniz, through his attorney of record in a pending civil action in Brazil and/or by registered mail to the corporate headquarters of Peninsula Participacoes, a Brazilian entity he founded and of which he currently serves as a principal; and

- 4 -

- On the remaining Individual Defendants, by registered mail to the corporate headquarters of nonparty Brazilian entities where the defendants serve as officers and/or directors.

Courts overwhelmingly agree that these methods are "reasonably calculated . . . to apprise [Defendants] of the pendency of the action and afford them an opportunity to present their objections." *See, e.g.*, *United States v. Besneli*, No. 14-cv-7339 (JFK), 2015 WL 4755533, at \*2 (S.D.N.Y. Aug. 12, 2015). Moreover, these methods do not violate the I-A Convention or any other international agreement. Lead Plaintiff therefore requests that this motion be granted so that this matter may proceed without undue delay.

## II.    LEGAL AUTHORITY

### A.    Lead Plaintiff Is Not Required to Attempt Service Through Diplomatic Channels Before Seeking Alternate Service Under Rule 4(f)(3)

Rule 4(f)(3) of the Federal Rules of Civil Procedure allows a court to order alternate service as long as the proposed method of service: (1) is not prohibited by international agreement; and (2) comports with due process.[3] Those are the two – and only two – requirements that must be met

---

[3] Federal Rule of Civil Procedure 4(f)(3) reads, in pertinent part:

(f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual-other than a minor, an incompetent person, or a person whose waiver has been filed-may be served at a place not within any judicial district of the United States:

(1) by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by; (i) delivering a copy of the summons and of the complaint

before alternate service can be ordered.  As the Ninth Circuit explained in *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (emphasis added):

> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2).  Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or."  Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing.  Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and ***certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.***

*Id.*

Although the Second Circuit has not weighed in on whether there is a hierarchy to the subsections of Rule 4(f), numerous district courts in this Circuit have cited *Rio Properties* approvingly and held that Rule 4(f)(3) stands independently of Rule 4(f)(1).  In *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018), for example, the court cited *Rio Properties*, and held that "service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  Likewise, in *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12-cv-5754 (LAK) (AJP), 2013 WL 6799973, at *8 (S.D.N.Y. Dec. 20, 2013), the court relied on *Rio Properties* and ruled that "it is not necessary to exhaust or demonstrate the impossibility of service under Rule 4(f)(1)-(2) before resorting to service under Rule 4(f)(3).");  *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) ("It is well established that 'there is no hierarchy among the subsections in Rule 4(f).'"  *See also Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 511 (2013); *In re Sinohub, Inc. Sec.*

---

to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual . . . ; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(3).

*Litig.*, No. 12-cv-8478 (WHP), 2013 WL 4734902, at \*2 (S.D.N.Y. Aug. 14, 2013); *Advanced*

*Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505 (ALC) (DCF), 2012 WL 299959, at \*1 (S.D.N.Y.

Jan. 31, 2012); *KPN B.V. v. Corcyra D.O.O.*, No. 08-cv-1549 (JGK), 2009 WL 690119, at \*1

(S.D.N.Y. Mar. 16, 2009); *see also In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265

(S.D.N.Y. 2012); *SEC v. Anticevic*, No. 05-cv-6991 (KMW), 2009 WL 361739, at \*3 (S.D.N.Y. Feb.

13, 2009).

Thus, it is not necessary for Lead Plaintiff to first attempt service through "internationally

agreed means" under Rule 4(f)(1) before turning to any "other means not prohibited by international

agreement" under Rule 4(f)(3). While the appropriate service ordered under Rule 4(f)(3) will "vary

depending upon the particular circumstances of the case," it will be acceptable if the alternative

method "(1) is not prohibited by international agreement, and (2) comports with constitutional

notions of due process." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12-cv-9258 (ALC)

(MHD), 2014 WL 1331046, at \*10 (S.D.N.Y. Mar. 31, 2014) (citation omitted).

Mindful of its obligation under the PSLRA to pursue claims on behalf of the proposed Class

in an effective manner, Lead Plaintiff respectfully requests alternative service to avoid the

substantial delays inherent to service under the I-A Convention. In ideal circumstances, service in

Brazil under the I-A Convention takes up to 18 months, if not longer, (*see* Myers Aff., ¶7), with

some courts recognizing that service could potentially take up to three years, if service there can be

effected at all. *See Lyman Morse Boatbuilding Co., Inc. v. Lee*, No. 10-cv-337 (DBH), 2011 WL

52509, at \*3 (D. Me. Jan. 6, 2011) (noting that "any attempt at formal service through the Brazilian

judicial system will be, if not fruitless, prolonged for such an extensive period of time that evidence

and testimony may well be affected"). The process is lengthy, requires coordination by numerous

different parties, and necessitates several layers of administrative review. Documents being served

must be specifically prepared and submitted to U.S. district court staff for endorsement, then the papers must be transmitted to agencies working under the U.S. Department of Justice, and next to the Peruvian Central Authority (*Ministerio de Relaciones Exteriores del Peru*).  Myers Aff. ¶¶5-6.  The request is then handed off to the Brazilian courts for further review.  *Id.*, ¶7.  The process generally begins in Brazil's Superior Court of Justice (*Superior Tribunal de Justica*) and is then transferred to a "special court" or other lower court, depending on the defendant's location, the type of action, or other difficulties encountered."  *Id.*  The I-A Convention places no time constraints upon foreign authorities with respect to how soon they must effect service after receipt of a request.  *Id.*  Given that service under the I-A Convention is a burdensome, lengthy, and expensive process with various procedural hurdles, and that both the I-A Convention and the Federal Rules of Civil Procedure permit service by means other than the I-A Convention, more expedient means of service are warranted here.

### B.    Alternative Service in Brazil Is Not Prohibited by the I-A Convention or Any Other International Agreement

The U.S. and Brazil are both signatories to the I-A Convention, which provides a mechanism for international service of process through letters rogatory in civil and commercial matters.  *See Russell Brands, LLC v. GVD Int'l Trading, SA*, 282 F.R.D. 21, 24 (D. Mass. 2012).  But while the I-A Convention provides *a* protocol for service of process, it is "not the exclusive means for serving process in signatory countries."  *Id.*  Rather, "[t]he Convention merely provides one possible method of service . . . It is neither mandatory nor exclusive."  *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, No. 92-cv-4528 (SS), 1994 WL 198696, at *5 (S.D.N.Y. May 19, 1994)*; accord NYKCool A.B.*, 2013 WL 6799973, at *8 ("Courts analyzing the I-A Convention have concluded that it does not foreclose service by means other than letters rogatory."); *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22

F.3d 634, 647 (5th Cir. 1994) ("[W]e conclude that the Convention does not preempt every other conceivable method of serving process on defendants residing in other signatory states.").

Consequently, it is not uncommon for courts to allow service by alternate means in signatory countries to the I-A Convention, including Brazil. *See, e.g.*, *Walsh v. Denis*, No. 16-cv-0945 (AWT), 2017 WL 819957, at *3 (D. Conn. Mar. 2, 2017); *Lyman Morse Boatbuilding Co.*, 2011 WL 52509, at *3; *Liberty Media Holdings, LLC v. Vinigay.com*, No. 11-cv-0280 (PHX) (LOA), 2011 WL 810250, at *4 (D. Ariz. Mar. 3, 2011); *Russell Brands*, 282 F.R.D. at 24; *Paiz v. Castellanos*, No. 06-cv-22046, 2006 WL 2578807, at *1 (S.D. Fla. Aug. 28, 2006).

Aside from the I-A Convention, no other international agreement governs service of process for litigation in the United States on parties located in Brazil. *See J.B. Custom, Inc. v. Amadeo Rossi, S.A.*, No. 10-cv-326, 2011 WL 2199704, at *2 (N.D. Ind. June 6, 2011) ("the only internationally agreed means of service between the United States and Brazil is the [I-A Convention]"). Thus, "there is no international agreement prohibiting [alternative] service . . . in Brazil," and the Court is free to order alternative service so long as those methods comply with due process. *Liberty Media Holdings, LLC*, 2011 WL 810250, at *4.

To be sure, there is a line of cases that suggests that in countries governed by the Hague Convention, a plaintiff must attempt service through diplomatic channels before seeking alternate service. *See, e.g.*, *Altos Hornos de Mex.*, *S.A.B. de C.V. v. Rock Res. Ltd.*, No. 15-cv-1671 (JSR), 2015 WL 6437384 (S.D.N.Y. Oct. 19, 2015); *Sinohub*, 2013 WL 4734902, at *1. But Brazil is not a party to the Hague Convention; it is only a party to the I-A Convention. This distinction is critical. Unlike the I-A Convention procedures, which are "neither mandatory nor exclusive," *see Mayatextil*, 1994 WL 198696, at *5, "[u]se of the [Hague] Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service." *Amaprop Ltd. v. Indiabulls Fin. Servs.*

*Ltd.*, No. 10-cv-1853(PGG)(JCF), 2012 WL 4801452, at *6 (S.D.N.Y. Oct. 5, 2012) (citing Advisory Committee Notes to 1993 Amendments to Rule 4(f)); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 705 (1988) ("[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies[.]").  Thus, "in cases involving service on persons residing *in a country that is a signatory to the Hague Convention*, some courts require plaintiffs to first attempt service pursuant to that protocol."  *Cf. Rana v. Islam*, 305 F.R.D. 53, 66 (S.D.N.Y. 2015) (emphasis added).  This threshold requirement, however, is based on the mandatory nature of the Hague Convention; it is not based in Rule 4(f)(3).  *See Rio Props.*, 284 F.3d at 1015 n.4 ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1).").

Lastly, the principles of international comity are less pronounced in the context of service of process because a complaint is a notice document "which simply delivers information."  *Russell Brands, LLC*, 282 F.R.D. at 25 (citing *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487, 494 (D.C. Cir. 1984)).  Thus, "[w]hen process in the form of a complaint is served . . . the informational nature of the process renders the act of service relatively benign in terms of infringement on the foreign nation's sovereignty."  *Id.*  For that reason, courts have recognized that service of process is fundamentally different than service of a subpoena, a document "which compels action and 'carries with it the full array of American judicial power[.]'"  *Id.*  One court in this Circuit recently relied on this distinction in authorizing alternate service in Brazil before the plaintiff attempted service under the I-A Convention.  *See Walsh*, 2017 WL 819957, at *4 (authorizing alternate service in Brazil before plaintiff attempted service under the I-A Convention and observing that principles of comity are less pronounced with respect to service of process than service of a

subpoena).  Accordingly, given the informational nature of service of process, considerations of international comity do not weigh against the granting of this motion.

### C.   Service Upon Defendant Luz Through BRF's Domestic Counsel or Registered Agent Is Proper and Comports with Due Process

To comport with due process, the means by which alternative service is effected "must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Walsh*, 2017 WL 819957, at *2 (internal quotations and citations omitted); *see also Luessenhop v. Clinton Cty.*, 466 F.3d 259, 269 (2d Cir. 2006) (process must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties" and an opportunity to object).  Here, the methods of service proposed by Lead Plaintiff easily satisfy this standard.

### 1.   Lorival Luz Is a Key BRF Executive

Luz was first appointed to serve as BRF's Chief Financial Officer ("CFO") and Chief Investor Relations Officer ("IRO") in September 2017.  On April 23, 2018, BRF's Global Chief Executive Officer ("CEO") Jose Aurelio Drummond Jr. abruptly resigned, and Luz was appointed to serve as interim CEO until a new CEO could be appointed.  *See* Rosenfeld Decl., Ex. A.  On April 27, 2018, the Company filed its annual report for fiscal year ended December 31, 2017 on Form 20-F with the SEC (the "2017 Form 20-F").  *Id.*, Ex. E.  Luz, the acting CEO on that date, signed the 2017 Form 20-F on behalf of the Company.  *Id.*  On May 29, 2018, the Company filed an amendment to its 2017 annual report on Form 20-F/A with the SEC (the "2017 Form 20-F/A").  *Id.*, Ex. F.  The 2017 Form 20-F/A was also signed by Luz on behalf of the Company.  *Id.*  On June 14, 2018, the Company appointed Pedro Pullen Parente ("Parente") to fill the role of Global CEO, and, on June 18, 2018, he formally assumed to role of CEO.  *Id.*, Ex. B and Ex. C.  Thus, during the

period from April 28, 2018 until June 18, 2018, Luz simultaneously served as the Company's Global

CEO, CFO, and IRO. *Id.*

Luz's reign as interim CEO ended on June 18, 2018 when Parente took office. He then

immediately transitioned into a newly-created management position – Global Chief Operating

Officer ("COO"). *Id.*, Ex. C. On October 8, 2018, *Reuters* reported that Parente was expected to

resign as CEO in mid-2019, and would be replaced by Defendant Luz. *Id.*, Ex. D.

### 2. Due Process Permits Service of Process on a Corporate Officer Through the Corporation's Domestic Counsel of Record

Courts in this District and elsewhere routinely hold that a plaintiff may properly serve a

foreign defendant by effecting service on the domestic counsel or registered agent for a company in

which the defendant is an officer or director. *See, e.g.*, *Stream SICAV*, 989 F. Supp. 2d at 280-81

(directing service on foreign defendant by serving the company's registered agent and counsel of

record by certified mail); *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 562 (C.D. Cal.

2012) (authorizing service on foreign officer and directors of Chinese corporation through the

company's registered agent for service of process); *In re China Educ. Alliance, Inc. Sec. Litig.*, No.

10-cv-9239 (CAS) (JCx), 2011 WL 6846214, at *3 (C.D. Cal. Dec. 29, 2011) (authorizing service on

directors of foreign corporation that trades on the New York Stock Exchange through the company's

agent for service of process, and noting that service through the corporation is reasonably calculated

to apprise the interested parties of the action); *Rose v. Deer Consumer Prods., Inc.*, No 11-cv-03701

(DMG) (MRWx), 2011 WL 6951969, at *2 (C.D. Cal. Dec. 29, 2011) (permitting service on the

company's registered agent where each individual defendant was a current or former officer or

director of the company, the company was actively participating in the action, and the company's

counsel had communications with the individual defendants).

The rationale for authorizing such service is that a corporation's attorney or registered agent will undoubtedly inform the officer or director that service has been made upon it. *See GLG Life Tech.*, 287 F.R.D. at 267 ("[I]t is impossible to imagine that a corporation's attorney would not advise the corporation's [officer and directors] of the fact that service destined for that officer had been made upon its attorney."); *Brown*, 285 F.R.D. at 566 (explaining that unserved officers' and directors' "close connection" with the corporation make it "all but certain" that directors served through counsel "will receive notice of the suit").

For the same reasons, alternate service on a foreign officer or director defendant through a company's domestic counsel or registered agent is "reasonably calculated" to apprise those defendants of the pendency of the action, and thus comports with due process. *See, e.g.*, *GLG Life Tech*, 287 F.R.D. at 267 (finding that service on foreign CEO through the corporation's domestic counsel comports with due process); *Rose*, 2011 WL 6951969, at *2 ("[S]ervice of the Individual Defendants by service on Deer Consumer's registered agent for service of process comports with constitutional notions of due process.").

In this case, Defendant Luz is alleged to have made false and misleading statements regarding the bribery scheme, served as BRF's CFO and IRO during the Class Period, presently serves as the COO, and has been appointed to serve as the Company's Global CEO starting in mid-2019. BRF's domestic counsel, Skadden, is actively defending these claims. There is little doubt that Skadden is in contact with the Company's former CFO, current COO, and incoming CEO, regarding a lawsuit involving so many aspects of the Company's operations. In fact, it is hard to imagine that Skadden has not already been in contact with Defendant Luz and that Luz is not closely monitoring this case. Under these circumstances, alternative service of process on Skadden is

- 13 -

reasonably calculated to apprise Defendant Luz of the pendency of this action, and will afford him an opportunity to present his objections, thereby satisfying due process.

**3.    Service on Defendant Luz Through Skadden Is Proper
Because Luz Has Actual Knowledge of This Litigation**

Even where courts impose a threshold requirement before allowing alternate service on foreign defendants, they nevertheless allow plaintiffs to serve a foreign defendant through his or her counsel of record.  In *Atlantica Holdings, Inc.*, No. 13-cv-5790 (JMF), 2014 WL 12778844, at *3 (S.D.N.Y. Mar. 31, 2014), for example, the court held that enforcing threshold requirements before authorizing alternate service on a Kazakhstani bank through its counsel in New York "would not make good sense."  Although the plaintiff had not even attempted to serve the bank through letters rogatory, there was "no dispute" that the New York firm was the bank's counsel of record and that it had "both actual notice of the instant action and actual possession of the Complaint."  *Id.*  The court also noted that the plaintiffs "diligently s[ought] to negotiate acceptance of service with [the New York counsel]."  *Id.*  Thus, the "[p]laintiffs' decision to seek leave to effect alternative service is not whimsical, but sensible."  *Id.*

Likewise, courts have authorized alternate service on a company's executives through the company's domestic counsel before plaintiff attempted service through diplomatic means.  For example, in *Sinohub*, 2013 WL 4734902, at *3, the plaintiff sought leave to serve three defendants in China through the company's domestic attorneys, Seyfarth Shaw, before it even attempted service under the Hague Convention.  Two defendants were former directors who had little to no communication with the company's attorneys; the third was the company's CEO and chairman of the board.  *Id.*  The court denied the motion as to the two former directors, but allowed plaintiff to serve the CEO through the company's counsel because there was "no question that he [was] aware of this lawsuit and in regular communication with Seyfarth Shaw."  *Id.*

- 14 -

Here too, BRF cannot seriously dispute that Skadden is in close contact with Luz, BRF's former CFO, current COO, and incoming CEO. Nor can the Company dispute that Luz has actual knowledge of this litigation. Indeed, as discussed *supra*, Luz was BRF's CEO on April 27, 2018 when the Company filed its 2017 Form 20-F. *See* Rosenfeld Decl., Ex. E. The 2017 Form 20-F, which was signed by Luz on behalf of the Company, disclosed this litigation in three different places, as follows:

**Unfavorable outcomes in legal proceedings may reduce our liquidity and negatively affect us**.

\*     \*     \*

On March 12, 2018, a purported shareholder class action lawsuit was filed in the U.S. Federal District Court in the Southern District of New York alleging, among other things, that BRF and certain of its officers and/or directors engaged in securities fraud or other unlawful business practices related to the regulatory issues described above. Because this lawsuit is in its early stage, the possible loss or range of losses, if any, arising from this litigation cannot be estimated. While we believe that the claims against us are without merit and will continue to defend against the litigation vigorously, in the event that this litigation is decided against us, or we enter into an agreement to settle, there can be no assurance that an unfavorable outcome would not have a material impact on us.

\*     \*     \*

**U.S. Class Action**

On March 12, 2018, a purported shareholder class action lawsuit was filed in the U.S. Federal District Court in the Southern District of New York alleging, among other things, that BRF and certain of its officers and/or directors engaged in securities fraud or other unlawful business practices related to the regulatory issues described in "Item 8. Financial Information—B. Significant Changes." Because this lawsuit is in its early stage, the possible loss or range of losses, if any, arising from this litigation cannot be estimated. While we believe that the claims against us are without merit and will continue to defend against the litigation vigorously, in the event that this litigation is decided against us, or we enter into an agreement to settle there can be no assurance that an unfavorable outcome would not have a material impact on us.

\*     \*     \*

- 15 -

### 38.2. U.S. Class Action

On March 12, 2018, a purported shareholder class action lawsuit was filed in U.S. Federal District Court in the Southern District of New York alleging, among other things, that BRF and certain of its officers and/or directors engaged in securities fraud or other unlawful business practices related to the regulatory issues. Because this lawsuit is in its early stage, the possible loss or range of losses, if any, arising from this litigation cannot be estimated. While BRF believes that the claims are without merit and will continue to defend against the litigation vigorously, in the event that this litigation is decided against the Company, or BRF enter into an agreement to settle there can be no assurance that an unfavorable outcome would not have a material impact.

In addition, Luz was the acting CEO on May 29, 2018 when the 2017 Form 20-F/A was filed. *See* Rosenfeld Decl., Ex. F. Once again, the 2017 Form 20-F/A was both signed by Luz on behalf of the Company, and disclosed this litigation, as follows:

### 38.2. U.S. Class Action

On March 12, 2018, a purported shareholder class action lawsuit was filed in U.S. Federal District Court in the Southern District of New York alleging, among other things, that BRF and certain of its officers and/or directors engaged in securities fraud or other unlawful business practices related to the regulatory issues. Because this lawsuit is in its early stage, the possible loss or range of losses, if any, arising from this litigation cannot be estimated. While BRF believes that the claims are without merit and will continue to defend against the litigation vigorously, in the event that this litigation is decided against the Company, or BRF enter into an agreement to settle there can be no assurance that an unfavorable outcome would not have a material impact.

In sum, Luz was, and is a key BRF executive, and signed two different SEC filings in which this litigation was disclosed four different times. Thus, as in *Atlantica Holdings* and *Sinohub*, it makes "good sense" to allow Lead Plaintiff to effect service on Luz through BRF's counsel, Skadden.

### D.   Service On Defendants Pedro Faria, Helio Rubens Mendes, and Abilio Diniz Through Their Brazilian Counsel Comports with Due Process

Courts commonly authorize plaintiffs to effect service on foreign defendants through the party's attorney of record in pending criminal and civil proceedings. To satisfy due process, "a party

seeking leave to serve an individual by counsel must show adequate communication between the individual and the attorney." *GLG Life Tech*, 287 F.R.D. at 267.

As alleged in the Amended Complaint, criminal charges have been brought against Defendants Helio Rubens Mendes and Pedro Faria in connection with Operation Weak Flesh in Brazil.  ¶573.  In addition, on October 15, 2018, the Brazilian Federal Police issued a 404-page investigative report recommending charges against various BRF employees, BRF's former chairman, Defendant Abilio Diniz.  Under Brazil's Code of Criminal procedure, all criminal defendants have the right to counsel, not only after a criminal complaint, but also during the investigative phase that precedes the filing of a criminal complaint. Tescari Decl., ¶6.  At all stages of the proceedings, a power of attorney containing the attorney's full name and professional contact information must be filed with the Brazilian court. *Id.*

Lead Plaintiff therefore retained the services of an experienced Brazilian attorney, Renato Mantoanelli Tescari, to conduct an investigation to identify the  counsel for Defendants Pedro Faria and Helio Rubens Mendes (against whom a criminal complaint had already been filed) and Defendant Abilio Diniz (against whom charges have been recommended, but not yet filed).  Tescari Decl., ¶5.  As described more fully in his accompanying declaration, Mr. Tescari was able to obtain the Powers of Attorney filed on behalf of Defendants Pedro Faria and Helio Rubens Mendes directly from the dockets of the related criminal proceedings. *Id.*, ¶¶7-10.  In accordance with Brazilian law, the Powers of Attorney contain the professional contact information for the attorneys of record for Defendants Pedro Faria and Helio Rubens Mendes, respectively.  *Id.*, ¶¶10-11.

In these circumstances, service upon defendants' attorneys is calculated to give these defendants notice of this action, and thus satisfies due process.  *See, e.g.*, *Lyman Morse Boatbuilding*, 2011 WL 52509, at *3 (approving service on defendant's attorney by certified mail in

Brazil); *see also In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR), 2015 WL 10846515, at *2 (S.D.N.Y. Nov. 2, 2015) (approving service on Brazilian criminal defense attorneys who were believed to be currently representing defendants and "can communicate with them regarding the present lawsuit"); *Rana*, 305 F.R.D. at 65-66; *Bidonthecity.com*, 2014 WL 1331046, at *9-*10; *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 514-15 (S.D.N.Y. 2013); *Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-CV-9641 (RCC), 2005 WL 696769, at *3 (S.D.N.Y. Mar. 23, 2005).

As for Defendant Diniz, because the criminal proceedings against him are still in their preliminary stages and charges have not been formalized against him, no Power of Attorney has yet been filed on his behalf.[4] *Id.*, ¶12.  Mr. Tescari, however, identified a pending civil action in Brazil brought by Abilio Diniz against the sellers of allegedly forged art.  *Id.*, ¶13.  A Power of Attorney was filed in that action, and contains the professional contact information of Defendant Diniz's counsel of record.  *Id.*, ¶14.  A review of the docket indicates that the case is being actively litigated, with the most recent filing occurring on June 18, 2018.  *Id.*, ¶13.

Given these facts, it is reasonable to believe that Defendant Diniz is in close contact with his attorneys and receives regular updates on this matter.  Accordingly, service on his attorneys of record in the civil action is reasonably calculated to apprise Defendant Diniz of the pendency of this action and comports with due process.  *See Amto, LLC v. Bedford Asset Mgm't, LLC*, No. 14-cv-9913, 2015 WL 3457452, at *6 (S.D.N.Y. June 1, 2015) (authorizing service on foreign counsel in England in ongoing litigation because the English attorneys "are likely in regular contact with [the defendant]"); *Walsh*, 2017 WL 819957, at *4 (permitting service on a Brazilian resident through his attorney of record in unrelated family court matter in Connecticut).

---

[4]  To the extent that criminal charges are brought against Defendant Diniz and criminal counsel information is made available, Lead Plaintiff can also serve Diniz through such counsel.

**E.     Service on a Corporate Officer or Director by Registered Mail to the Corporation Comports with Due Process Because the Corporation Will Inform Its Officers and/or Directors About the Lawsuit**

In the Second Circuit, "service by registered mail does not violate constitutional due process" so long as the process is reasonably calculated to provide interested parties notice of the action. *See Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986). Thus, courts regularly authorize service by mail to defendants in foreign countries, including Brazil. *See, e.g.*, *TracFone Wireless, Inc. v. Washington*, 290 F.R.D. 686, 688 (M.D. Fla. 2013) (ordering alternate service by FedEx on Peruvian defendants); *Rio Props.*, 284 F.3d at 1016 ("[T]rial courts have authorized a wide variety of alternative methods of service including . . . ordinary mail[.]"); *SEC v. Lines*, No. 07-cv-11387 (DLC), 2009 WL 2431976, at *2-*3 (S.D.N.Y. Aug. 7, 2009) (authorizing alternative service by certified mail); *Russell Brands*, 282 F.R.D. at 26 (allowing personal and email service upon defendant's U.S. attorneys and service via Federal Express at defendant's Brazilian address).

Furthermore, courts routinely allow plaintiffs to serve foreign defendants by effecting service on companies in which the defendants serve as officers or directors, based on the presumption that the Company will inform the defendant about the lawsuit. *See, e.g.*, *Stream SICAV*, 989 F. Supp. 2d at 280-81 (directing service on foreign defendant by serving the company's registered agent and counsel of record by certified mail); *GLG Life Tech*, 287 F.R.D. at 267 ("[I]t is impossible to imagine that a corporation's attorney would not advise the corporation's [officer and directors] of the fact that service destined for that officer had been made upon its attorney."); *China Integrated*, 285 F.R.D. at 566 (explaining that unserved officers' and directors' "close connection" with the corporation make it "all but certain" that directors served through counsel "will receive notice of the suit").

Here, Lead Counsel conducted an investigation and searched public records to identify nonparty entities where the remaining Individual Defendants serve as officers and/or directors. The

- 19 -

majority of the information is located on websites maintained by the nonparty entities themselves. Thus, given the veracity of the address information, service by registered or overnight mail satisfies due process. *See In re Petrobras*, 2015 WL 10846515, at *1 ("Plaintiffs represent that they searched public records and retained an investigator in Brazil to verify the last known addresses of each Individual Defendant and obtained some addresses from the Brazilian Superior Court of Justice. On the basis of these representations, the Court concludes that registered or overnight mail to these last known addresses satisfies due process requirements.") (citation omitted).

### F.   BRF Lacks Standing to Contest This Motion

BRF, the only defendant unaffected by this motion, has indicated that it intends to oppose it. BRF, however, has already been served, and the Court's order on this motion – regardless of whether the motion is granted or denied – will not impact BRF in any way. Because BRF has no stake in the outcome of this motion, it lacks standing to take any position on the motion, and any opposition brief submitted by BRF should not be considered. *See Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 114-15 (S.D.N.Y. 2010) (holding that the defendant who was properly served lacks standing to oppose motion for alternate service on foreign defendant, and striking brief submitted by served defendant in opposition to motion for alternate service); *Lines*, 2009 WL 2431976, at *2 (holding that properly-served defendants do not have standing to oppose substitute service on unserved defendants); *Sayles v. Pac. Eng'rs & Constructors, Ltd.*, No. 08-cv-676S, 2009 WL 791332, at *7 (W.D.N.Y. Mar. 23, 2009) ("The foreign defendants, who would have standing to contest . . . any defects in the process or its service[] have yet to appear . . . [T]he appearing defendants lack standing to raise this objection[.]").

- 20 -

### III.      CONCLUSION

Under Rule 4(f)(3), a court may order alternate service if the proposed methods of service: (1) do not violate any international agreement; and (2) comport with due process.  It is well-established in this Circuit that a plaintiff is not required to attempt service through diplomatic means before the Court may order alternate service under Rule 4(f)(3).  In this case, the proposed methods of service (1) are permitted by the I-A Convention, the only international agreement governing service in Brazil; and (2) are reasonably calculated to provide defendants with notice of this action. Moreover, service under the I-A Convention is unduly burdensome, expensive, and will unnecessarily delay the resolution of this action.  Accordingly, Lead Plaintiff respectfully asks this Court to enter an order authorizing alternate service on the Individual Defendants.

DATED:  November 7, 2018                         ROBBINS GELLER RUDMAN
                                                                        & DOWD LLP
                                                                 SAMUEL H. RUDMAN
                                                                 DAVID A. ROSENFELD
                                                                 MOSHE O. BOROOSAN


                                                                          */s/ David A. Rosenfeld*
                                                                 DAVID A. ROSENFELD

                                                                 58 South Service Road, Suite 200
                                                                 Melville, NY  11747
                                                                 Telephone:  631/367-7100
                                                                 631/367-1173 (fax)
                                                                 srudman@rgrdlaw.com
                                                                 drosenfeld@rgrdlaw.com
                                                                 mboroosan@rgrdlaw.com

                                                                 *Lead Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such public filing to all counsel registered to receive such notice.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2018.

*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD