UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE: BRF S.A. SECURITIES
LITIGATION

OPINION AND ORDER

18-cv-2213 (PKC)

-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff City of Birmingham Retirement and Relief System ("Birmingham") moves for an order permitting it to use alternate means to effectuate service of process on eight individual defendants who reside in Brazil. See Rule 4(f)(3), Fed. R. Civ. P. All of these defendants are former officers or directors of defendant BRF S.A. ("BRF," or the "Company").

For the reasons that will be explained, Birmingham has demonstrated that alternate service under Rule 4(f)(3) is appropriate. But the methods of alternate service must satisfy due process, meaning that service must be reasonably calculated to apprise the parties of the action and provide them an opportunity to object. See generally Luessenhop v. Clinton County, N.Y., 466 F.3d 259, 269 (2d Cir. 2006). Birmingham has proposed various methods for serving the individual defendant, which differ according to the information that it has obtained for each defendant.

For the reasons that will be explained, the Court concludes that the proposed methods for serving defendants Pedro Faria, Helio Rubens Mendes and Abilio Diniz satisfy due process. As to five other defendants, Birmingham proposes to serve them via certified mail at their current business addresses. These businesses are non-parties to this action and Birmingham's efforts to identify the defendants' current places of employment was limited to performing unspecified online research. Birmingham has not demonstrated that attempting

service through these business addresses is reasonably calculated to apprise defendants of the action and provide them with an opportunity to respond, and the motion is therefore denied without prejudice as to those defendants.

BACKGROUND.

Defendant BRF is a food processor and poultry exporter headquartered in São Paulo, Brazil. (Second Am. Compl't (the "Complaint") ¶ 2.) Its American Depository Receipts ("ADRs") trade on the New York Stock Exchange. (Compl't ¶ 16.)

According to the Complaint, BRF and its top executives participated in an extensive scheme to bribe regulators and public officials responsible for enforcing Brazil's food-safety standards. (Compl't ¶¶ 3-4.) An investigation by Brazil's law enforcement led to the arrests of numerous public officials and some BRF executives, including its former CEO. (Compl't ¶¶ 4, 6.)

Birmingham is lead plaintiff under the Private Securities Litigation Reform Act. It brings claims under sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder. It alleges that defendants made materially misleading statements and omissions concerning the bribes paid to officials and the safety of BRF's products. In addition to BRF, the Complaint names nine individual defendants, all of whom are former officers or directors of BRF. (Compl't ¶¶ 19-28.)

Service of process was effectuated on BRF within the United States. (Pl. Mem. 3.) However, at the time this motion was filed, none of the individual defendants, all of whom were officers or directors of the Company, had been served. BRF's attorney in this case, the law firm of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), has stated that it is not authorized to accept service on behalf of any individual defendant. (Response at 1 n. 2.) After

Birmingham filed this motion, Skadden was retained by defendant Lorival Luz, and apparently has agreed to accept service on Luz's behalf.[1]

Birmingham explains that extraterritorial service may be effectuated in Brazil through the Inter-American Convention on Letters Rogatory and Additional Protocol (the "Inter-American Convention"), but urges that this process is complex and time-consuming, and would likely require 12 to 18 months to complete. It argues that the Inter-American Convention does not require any particular method of serving process, and only sets forth the procedures for issuing letters rogatory.

Birmingham therefore seeks leave to effectuate service through alternate means pursuant to Rule 4(f)(3). It urges that alternate service would not offend any international agreement between the United States and Brazil, and that its proposed methods of service are consistent with due process.

BRF, through its attorneys at Skadden, has filed a memorandum in response to Birmingham's motion. Birmingham urges that the Court should disregard the submission because a properly served defendant may not advance arguments on behalf of unserved defendants. See generally Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 114 (S.D.N.Y. 2010) (Leisure, J.) (collecting cases). However, a court may, in its discretion, consider any such arguments "as those of an amicus curiae . . . ." In GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (Gorenstein, U.S.M.J.). Given the usefulness of BRF's response memorandum, the Court has read and considered the arguments as if they were advanced by amicus curiae.

---

[1] Luz is the "Global Chief Operating Officer" of BRF. After this motion was filed, Luz retained Skadden to represent him in this action, and Skadden has since been authorized to accept service on Luz's behalf. (Response at 1; Reply at 1 n. 2.) Birmingham has withdrawn its motion as to Luz. (Reply at 1 n. 2.)

OVERVIEW OF RULE 4(f)(3).

Rule 4(f) governs service of process on individuals located in a foreign country. Rule 4(f)(1) permits service through "any internationally agreed means of service that is reasonably calculated to give notice," such as the Hague Convention. Rule 4(f)(2) permits service through other specified means, such as letters rogatory or the procedures prescribed by the foreign country's courts of general jurisdiction. Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders."

"Generally, there is no hierarchy among the subsections in Rule 4(f)." Advanced Aerofoil Techs., AG v. Todaro, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012) (Carter, J.); see also Swarna v. Al-Awadi, 2007 WL 2815605, at *1 (S.D.N.Y. Sept. 20, 2007) ("There is nothing in the text of the rule which contains a hierarchy of service methods as between Rule 4(f)(2) and Rule 4(f)(3)."). "Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." KPN B.V. v. Corcyra D.O.O., 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (Koeltl, J.) (quotation marks omitted).

"Rule 4(f)(3) permits a court to authorize a means of service on a foreign defendant so long as that means of service is not prohibited by international agreement and comports with constitutional notions of due process." Devi v. Rajapaska, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012) (Buchwald, J.). Due process is satisfied when the method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Luessenhop, 466 F.3d at 269.

In deciding whether to exercise their discretion to permit alternative service under Rule 4(f)(3), some courts have looked to whether there has been "(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." Devi, 2012 WL 309605, at *1. However, those considerations guide the exercise of discretion, and are not akin to an exhaustion requirement. See Washington State Inv. Bd. v. Odebrecht S.A., 2018 WL 6253877, at *6 (S.D.N.Y. Sept. 21, 2018) (Gardephe, J.); accord United States v. Besneli, 2015 WL 4755533, at *1 (S.D.N.Y. Aug. 12, 2015) ("Exhaustion of the other provisions of Rule 4(f) is not required before a plaintiff seeks court-ordered service.") (Keenan, J.); S.E.C. v. Anticevic, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) ("A plaintiff is not required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3).") (Wood, J.).

DISCUSSION.

   I.   Alternate Methods of Service Pursuant to Rule 4(f)(3) Is Appropriate.

       A. The Inter-American Convention Does Not Prohibit Alternate Service.

As noted, Rule 4(f)(3) permits alternative service "by other means not prohibited by international agreement . . . ." The Inter-American Convention is the applicable international agreement between Brazil and the United States. See, e.g., Washington State Inv. Bd., 2018 WL 6253877, at *5. "'The Convention merely provides one possible method of service, however. It is neither mandatory nor exclusive.'" Id. (quoting Mayatextil, S.A. v. Liztex U.S.A., Inc., 1994 WL 198696, at *5 (S.D.N.Y. May 19, 1994) (Sotomayor, U.S.D.J.)); accord In re: Petrobras Sec. Litig., 2016 WL 908644, at *2 (S.D.N.Y. Mar. 4, 2016) (the "Convention does not forbid other methods of service.") (Rakoff, J.).

Because the Inter-American Convention does not establish a mandatory method of service and does not prohibit any particular method of service, the Court has discretion to decide whether alternate service is appropriate in this case.

B. <u>Discretionary Considerations Weigh in Favor of Permitting Alternate Service.</u>

Birmingham urges that it should be permitted to serve process by alternate means because compliance with the Inter-American Convention would delay the litigation, possibly requiring eighteen months or more to complete service.

Birmingham has submitted an affidavit from Diane Myers, who works as a translator and paralegal at the litigation-support firm APS International, Ltd., and who describes procedures for Brazil's use of letters rogatory based on her personal knowledge and experience. (Myers Aff't ¶ 1.) Myers explains that, in her experience, once certified translations are provided to U.S. authorities, they are submitted to Brazil's Ministry of Justice, which then forwards the requests to the country's court system. (Myers Aff't ¶¶ 5-7.) She states that no party or attorney is able to speed the rate at which such requests are processed. (Myers Aff't ¶ 7.) She states that the Convention does not place constraints on how quickly authorities must effectuate service after receiving a request. (Myers Aff't ¶ 7.) Brazilian authorities ultimately provide proof of service in Portuguese, which is then translated into English. (Myers Aff't ¶ 8.) Myers states that, in her experience, effectuating service of process in Brazil through the Inter-American Convention often takes "twelve to eighteen months or longer." (Myers Aff't ¶ 7.)

In <u>Washington State Investment Board</u>, Judge Gardephe permitted alternate service under Rule 4(f)(3) in a context highly similar to the present case. There, plaintiff brought securities fraud claims arising from a bribery scandal involving a company headquartered in Brazil. 2018 WL 6253877, at *1. Plaintiff successfully served process on two Brazilian

6

corporate entities, but their parent company refused to accept service. Id. at *2. The Quinn Emanuel law firm, which represented the parent company in criminal proceedings and its subsidiary companies in the underlying securities fraud case, refused to accept service on the parent's behalf. Id. at *2. The plaintiff did not attempt service in Brazil through the Inter-American Convention, and instead moved pursuant to Rule 4(f)(3) to serve the parent company through either its law firm or its registered agent. Id.

Relying principally on an affidavit describing the complexity and length of time needed to accomplish service of process in Brazil under the Inter-American Convention procedures, Judge Gardephe concluded that alternate service effectuated through Quinn Emanuel was appropriate because "the letters rogatory process in Brazil . . . involves a multitude of steps," meaning that service was "complex and is likely to be time consuming," potentially requiring 12 to 18 months. Id. at *8. He noted that plaintiff had "made some attempts at service" and offered evidence "demonstrating the difficulties associated with the letters rogatory process in Brazil." Id. "This Court sees no purpose in requiring Plaintiff to make an effort to serve [defendant] through the letters rogatory system just to confirm the delays and difficulties that Plaintiff has already demonstrated are likely to occur." Id. While there was a risk that alternate service "presents some offense to Brazilian law," the factor was outweighed by the difficulty and delay of effecting service through letters rogatory. Id. at *9. Lastly, the court noted that other judges in this District had permitted alternate service on defendants located in Brazil. Id. at *10 (citing In re Petrobras Sec. Litig., 2015 WL 10846515 (S.D.N.Y. Nov. 2, 2015) (Rakoff, J.); In re Braskem, S.A. Sec. Litig., 15 Civ. 5132 (PAE) (S.D.N.Y. 2015) (Docket # 45)); see also Walsh v. Denis, 2017 WL 819957, at *3-4 (D. Conn. Mar. 2, 2017) (permitting alternative service on Brazilian defendant pursuant Rule 4(f)(3)) (Merriam, U.S.M.J.).

7

For largely the same reasons described in <u>Washington State Investment Board</u>, this Court concludes that alternate service of process is appropriate in this case. Through the Myers affidavit, Birmingham has offered some evidence that the letters rogatory process would be lengthy and convoluted, and likely to delay the progress of this case by as long as 18 months. Even a shorter delay could prolong resolution and complicate the progress this case. Birmingham has not attempted to effectuate service through the letters rogatory process, but, as Judge Gardephe observed, there is no useful purpose in requiring it to do so merely in order to confirm the existence of delay. And, as discussed, the Inter-American Convention does not require the use of letters rogatory, and merely prescribes a process for doing so.

Based on the likelihood of substantial delay arising from the letters rogatory process, the Court concludes that it is appropriate for Birmingham to effectuate alternate service of process on the individual defendants.

II.  <u>Birmingham's Proposed Methods and the Satisfaction of Due Process.</u>

Any proposed method of alternate service must satisfy due process. Due process is satisfied when the method of service is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" <u>Luessenhop</u>, 466 F.3d at 269 (quoting <u>Mullane v. Cent. Hanover Trust & Co.</u>, 339 U.S. 306, 314 (1950)). "'[N]o one form of substitute service is favored over any other so long as the method chosen is reasonably calculated . . . to give the defendant actual notice,' and in fashioning substitute service on a defendant located abroad, a court should 'tailor the manner of service to fit the necessities' of a particular case." <u>Lewis v. Madej</u>, 2015 WL 6442255, at *11 (S.D.N.Y. Oct. 23, 2015) (Cote, J.) (quoting <u>Int'l Controls Corp. v. Vesco</u>, 593 F.2d 166, 176 (2d Cir. 1979)).

Birmingham proposes different means of effectuating service depending on the information available as to each defendant. The Court separately considers whether each of the proposed methods satisfies the requirements of due process.

   A. Plaintiff Has Demonstrated that the Proposed Methods for Serving Pedro
      Faria and Helio Rubens Mendes Satisfies Due Process.

Birmingham seeks to serve defendants Pedro Faria and Helio Rubens Mendes via certified mail sent to (1) their attorneys of record in criminal proceedings currently pending in Brazil, and (2) defendants' home addresses. For the reasons that will explained, the Court concludes that this procedure is reasonably calculated under the circumstances to apprise Faria and Rubens Mendes of the pendency of this action and afford them an opportunity to present their objections. Luessenhop, 466 F.3d at 269. The motion is therefore granted as to Faria and Rubens Mendes.

Faria was BRF's "Global CEO" from January 1, 2015 to December 31, 2017, and prior to that, he was its "International CEO." (Compl't ¶ 22.) Rubens Mendes was BRF's Vice President of Supply Chain and a member of its executive board from January 1, 2015 to February 26, 2018. (Compl't ¶ 27.)

Birmingham has retained a Brazilian attorney, Renato Mantoanelli Tescari, to identify any criminal proceedings brought against Faria and Rubens Mendes and determine the status of their legal representation. Tescari states that he is the managing partner of a São Paulo law firm that practices litigation. (Tescari Dec. ¶ 2.)

Tescari states that section 261 of Brazil's Code of Criminal Procedure provides the right to an attorney for individuals who have criminal claims brought against them. (Tescari Dec. ¶ 6.) A client executes a "power of attorney" for his counsel of record, which lists the

9

attorney's name and business address.  (Tescari Dec. ¶ 6.)  The Brazilian Federal Prosecutor's Office maintains a searchable public website with case information.  (Tescari Dec. ¶¶ 7-8.)  Tescari explains that using that website, he identified "search and seizure measure[s] against" Rubens Mendes and Faria.  (Tescari Dec. ¶ 8.)  Using a "personal digital key," Tescari separately searched the database of a Brazil federal court in the state of Parana, and identified another "search and seizure measure" brought by Brazil's federal police against Rubens Mendes and Faria.  (Tescari Dec. ¶ 9.)  Both dockets include "Powers of Attorneys" signed by Rubens Mendes and Faria, and list the attorneys by name and business address.  (Tescari Dec. ¶ 10.)

Birmingham urges that service upon defendants' attorneys in these separate criminal proceedings satisfies due process.  In In re Petrobras, 2015 WL 10846515, at *2, Judge Rakoff concluded that due process was satisfied by effectuating service on defense counsel who represented defendants in proceedings in Brazilian courts.  The attorneys were identified through a search of public court dockets.  Id.  It appears that plaintiffs did not affirmatively demonstrate the frequency of communications between defendants and their attorneys in Brazil, but indicated a belief that the attorneys "can communicate with [defendants] regarding the present lawsuit." Id.  The court concluded that service through the Brazil attorneys was consistent with due process.  Id.; see also Lyman Morse Boatbuilding Co. v. Lee, 2011 WL 52509 (D. Maine Jan. 6, 2011) (ordering service to be made on resident of Brazil through attorneys that he retained in the United States and United Kingdom); Jian Zhang v. Baidu.com Inc., 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (ordering service to be made through defendant's retained counsel pursuant to Rule 4(f)(3)) (Furman, J.).

In its response papers, BRF urges that Birmingham has not demonstrated the frequency of communications between these defendants and their counsel.  However, attorneys

in an ongoing criminal proceeding are likely to be in communication with their clients. Birmingham's submissions indicate that the proceedings in Brazil have been the subject of considerable law-enforcement resources and a high level of public interest. The "Power of Attorney" filed by Rubens Mendes lists five attorneys from a São Paulo law firm, and Faria's lists four attorneys from a different São Paulo law firm. (Tescari Dec. ¶ 10.) The size of these legal teams indicates that substantial attorney time is expected to be directed toward the matter, and that communications between the Brazilian lawyers and their clients is likely.

Separately, in its reply memorandum, Birmingham states that it has located personal addresses for Faria and Rubens Mendes based on filings in the Brazil proceedings. Service to a home address using certified mail is consistent with due process. See, e.g., Miner v. Clinton Cnty., N.Y., 541 F.3d 464, 472-73 (2d Cir. 2008); Fuentes-Argueta v. INS, 101 F.3d 867 (2d Cir. 1996) ("It cannot be disputed that the use of certified mail to convey notices of . . . proceedings generally fits within the bounds of the process due to a litigant or prospective litigant. The courts have repeatedly upheld even the use of regular, first-class mail as a constitutionally adequate means of service.").

Birmingham has demonstrated that service upon counsel of record in the related Brazilian criminal proceedings is reasonably calculated to provide notice to defendants Faria and Rubens Mendes. See Luessenhop, 466 F.3d at 269. Due process also is satisfied through the delivery of a copy of the summons and complaint to defendants' home addresses via certified mail.

The motion is therefore granted as to Faria and Rubens Mendes, and service of process may be effectuated by sending a copy of the summons and amended complaint via certified mail to their counsel of record in Brazil, as well as to their home addresses.

B. Plaintiff Has Demonstrated that the Proposed Means of Serving Abilio Diniz Satisfies Due Process.

Defendant Abilio Diniz was chairman of BRF's board from April 9, 2013 through April 26, 2018. (Compl't ¶ 28.) In its moving papers, Birmingham sought to effectuate service of process on Abilio Diniz solely through an attorney who represents him in an unrelated civil proceeding in São Paulo state court. The claims in that case apparently involve Diniz's purchase of allegedly fraudulent artwork, and, based on the Court's review of the docket, the action appears to be ongoing. Birmingham does not urge that Diniz's civil action has any relationship to BRF or the Brazilian criminal proceedings.

In its reply papers, Birmingham explains that, after its moving papers were filed, Diniz retained counsel to represent him in criminal proceedings related to BRF. Birmingham states that on November 5, 2018, Diniz filed a "Power of Attorney" in Brazilian federal criminal proceedings that involve BRF. (Rosenfeld Reply Dec. ¶ 2 & Ex. A.) That document, which has been filed in the original Portuguese, is represented to identify Diniz's attorneys by name, law firm and business address. (Id.) Further, on November 13, 2018, a "Criminal Identification Form" was filed against Diniz in Brazilian federal court. (Id. ¶ 5 & Ex. D.) Birmingham has also filed a copy of what is represented to be a sworn statement to Brazilian prosecutors, dated November 27, 2018, which was signed by Diniz and two of his attorneys. (Id. ¶ 9 & Ex. H; Reply Mem. at 8.) It has filed a translated press report published in Brazil on November 27, 2018 about Diniz's "testimony" to Brazilian police. (Rosenfeld Reply Dec. ¶ 8 & Ex. G.)

Given Birmingham's showing that Diniz is now represented by counsel of record in an ongoing criminal proceeding related to BRF, the Court need not decide the question of whether attempting service solely through an attorney representing Diniz in the unrelated civil

12

matter would satisfy due process. See, e.g., AMTO, LLC v. Bedford Asset Mgmt., LLC, 2015 WL 3457452, at *6 (S.D.N.Y. June 1, 2015) (distinguishing service on attorney representing defendant in an unrelated civil case from service on an attorney in a proceeding related to the underlying facts). For the reasons explained as to defendants Faria and Rubens Mendes, service via certified mail on Diniz's counsel of record in the BRF-related Brazilian criminal proceedings is consistent with due process. It is likely that Diniz's criminal attorneys are knowledgeable about the underlying facts of this case and can communicate with him concerning the present lawsuit. See In re Petrobras, 2015 WL 10846515, at *2.

As an added measure, Birmingham is directed to also attempt to effectuate service of process through Diniz's attorney in his unrelated civil proceeding. While the Court does not decide the issue of whether service on that attorney alone would satisfy due process, courts have directed service to be made through attorneys who work on unrelated matters when service is also made through other means. Walsh, 2017 WL 819957, at *3-5 (directing service to be made through an attorney representing the defendant in an unrelated Connecticut family court litigation, when service was also made to defendant's business address and through e-mail addresses demonstrated to belong to defendant).

Lastly, as with Faria and Rubens Mendes, Birmingham states in their reply memorandum that they have identified Diniz's home address. For the reasons explained, service via certified mail to a defendant's home address is consistent with due process. Miner, 541 F.3d at 472-73.

Birmingham's motion is therefore granted as to defendant Diniz. Service of process shall be effectuated by sending a copy of the summons and amended complaint via

certified mail to (1) his counsel of record in the Brazilian criminal proceedings; (2) to his attorney in the unrelated civil proceeding in São Paulo state court; and (3) to his home address.

> C. As to the Remaining Defendants, Birmingham Has Not Demonstrated that the Proposed Method of Service to Their Places of Business Satisfies Due Process.

Birmingham seeks to serve five additional defendants through certified mail sent to non-party corporations where they currently serve as officers or directors. These corporations are not purported to have any relationship to BRF. In its memorandum of law, Birmingham explains that its attorneys "searched public records to identify nonparty entities where the remaining Individual Defendants serve as officers and/or directors." (Pl. Mem. 19.) It explains that "[t]he majority of the information is located on websites maintained by the nonparty entities themselves." (Id. at 19-20.)

The declaration of David Rosenfeld, an attorney for Birmingham, includes a table that lists the current positions of these defendants. (Rosenfeld Dec. ¶ 3.) As to two defendants, former BRF CEOs Claudio Galeazzi and Jose Antonio do Prado Fay, Birmingham has identified the addresses of companies where they serve as directors. (Rosenfeld Dec. ¶ 3.) For three other defendants, Birmingham lists addresses for companies where they purportedly are officers. According to Birmingham, BRF's former CFO Leopoldo Viriato Saboya is an officer at CVC Brasil Operadora e Agencia de Viagens S.A. in São Paulo, with the titles CFO, "IRO" and Administrative Vice President. (Rosenfeld Dec. ¶ 3.) Former CFO Augusto Ribeiro Junior is now CFO of Iochpe Maxion S.A. in São Paulo. (Rosenfeld Dec. ¶ 3.) Former CFO Jose Andre Carneiro Borges is now a board member of AGV Holdings in São Paulo and managing partner of Tarpon Investimentos S.A. in São Paulo. (Rosenfeld Dec. ¶ 3.)

Service of process made at a defendant's place of employment can be consistent with due process. See, e.g., Robinson v. Turner, 15 F.3d 82, 86 (7th Cir. 1994) ("Many state service provisions permit service to be made to the place of employment."); Trimble v. U.S. Dep't of Agric., 87 Fed. App'x 456, 458 (6th Cir. 2003) ("Service by certified package [to last known business address] is a constitutionally adequate method of notice.") (summary order); CPLR 308(4) (permitting service within New York state "by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' . . . .").

Here, Birmingham has not demonstrated that service of process at defendants' purported places of business is reasonably calculated to provide them with notice of the claims. These addresses were solely a product of unspecified online research. Birmingham does not identify the sources of its information and does not purport to have taken follow-up steps to confirm that the information is accurate and up-to-date. For instance, a showing of confirmatory phone calls, letters or e-mails, or the filing of recent, relevant publications could help demonstrate that service made to these addresses is reasonably calculated to provide notice.

There is a separate question of whether service made through a non-party company where a defendant sits on the board of directors would satisfy due process. Although not controlling authority for a due process analysis, courts applying the New York CPLR have described the determination of a defendant's place of business as turning on fact-specific considerations. See, e.g., Leung v. New York Univ., 2016 WL 1084141, at *6 (S.D.N.Y. Mar. 17, 2016) ("The case law demonstrates that whether service has been made at one's 'actual place of business' [under the New York CPLR] is a fact – and circumstance – specific inquiry.") (collecting cases) (Daniels, J.); TAGC Mgmt., LLC v. Lehman, 842 F. Supp. 2d 575, 582-83

(S.D.N.Y. 2012) (a defendant may have multiple places of business depending on whether he or she has held out a location as a place of business, routinely accepts business mail at a given address or taken other actions that induce reliance as to business activities) (Holwell, J.). An individual's role as a board member is significantly different than that of an officer or employee. A board member is less likely to receive general, business-related correspondence through the company, and communications are likely to be focused on the duties of the board. Birmingham argues that any company is "likely to forward" a summons and complaint to its directors (Reply at 10), but this conclusory argument does not demonstrate a method of service that is reasonably calculated to give notice.

In addition to effectuating service through the business addresses of non-party companies, Birmingham may wish to consider whether additional methods of service would be useful in effectuating notice, keeping in mind that "a court need only select one reliable mechanism, and that no one form of substitute service is favored over any other." AMTO, 2015 WL 3457452, at *5 (internal citations and quotation marks omitted). For instance, in certain circumstances, it may be appropriate to effectuate service through a confirmed business e-mail address. See, e.g., Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (service through a business e-mail address listed on company's homepage satisfied due process); NYKCool A.B. v. Pac. Int'l Servs., Inc., 66 F. Supp. 3d 385, 391 (S.D.N.Y. 2014) (under Rule 4(f)(3), service through a business e-mail address may be appropriate if plaintiff can demonstrate that the defendant uses the account to conduct business) (Kaplan, J.).

On this record, Birmingham has not demonstrated that effectuating service through the claimed business address of defendants Galeazzi, Fay, Saboya, Ribeiro and Borges is

reasonably calculated to apprise them of the claims against them and to give them an opportunity to object. The motion is therefore denied without prejudice to these defendants.

CONCLUSION.

Plaintiff's motion for alternate service is GRANTED as to defendants Faria, Rubens Mendes and Diniz. Plaintiff shall serve process upon defendants Faria and Rubens Mendes by sending, via certified mail, a copy of the Summons and Amended Complaint to their respective attorneys of record and their home addresses, as discussed above. The motion is DENIED without prejudice as to defendants Galeazzi, Fay, Saboya, Ribeiro and Borges.

The Clerk is directed to terminate the motion. (Docket # 61.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
January 18, 2019