UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| _____ x | | |
| In re BRF S.A. SECURITIES LITIGATION | : | Civil Action No. 1:18-cv-02213-PKC |
| _____ | : | |
| | : | CLASS ACTION |
| This Document Relates To: | : | MEMORANDUM OF LAW IN SUPPORT |
| | : | OF LEAD PLAINTIFF'S MOTION FOR |
| ALL ACTIONS. | : | FINAL APPROVAL OF CLASS ACTION |
| | : | SETTLEMENT AND APPROVAL OF PLAN |
| _____ x | | OF ALLOCATION |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................3

III.  STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
      SETTLEMENTS.....................................................................................................3

      A.   The Law Favors and Encourages Settlements ...........................................3

      B.   The Settlement Must Be Procedurally and Substantively Fair, Adequate
           and Reasonable ........................................................................................4

      C.   The Proposed Settlement is Procedurally and Substantively Fair,
           Adequate, and Reasonable .......................................................................6

           1.   The Settlement Satisfies the Requirements of Rule 23(e)(2)....................6

                a.   Lead Plaintiffs and Lead Counsel Have Adequately
                     Represented the Class ....................................................6

                b.   The Proposed Settlement Was Negotiated at Arm's Length
                     Before an Experienced Mediator ....................................6

                c.   The Proposed Settlement is Adequate in Light of the
                     Litigation Risks, Costs, and Delays of Trial and Appeal................8

                     (1)   The Risks of Establishing Liability at Trial.......................8

                     (2)   The Risks of Establishing Damages at Trial.......................9

                     (3)   The Settlement Eliminates the Additional Costs and
                           Delay of Continued Litigation ...........................................10

                d.   The Proposed Method for Distributing Relief is Effective............11

                e.   Lead Counsel's Request for Attorneys' Fees is Reasonable .........12

                f.   The Parties Have No Other Agreements Besides Opt-Outs ..........13

                g.   The Settlement Ensures Class Members are Treated
                     Equitably..................................................................13

           2.   The Settlement Satisfies the Remaining *Grinnell* Factors .........................14

                a.   The Lack of Objections to Date Supports Final Approval ............14

- i -

**Page**

       b.      Lead Plaintiffs Had Sufficient Information to Make an Informed Decision Regarding the Settlement ................................14

       c.      Maintaining Class-Action Status Through Trial Presents a Substantial Risk ..............................................................................15

       d.      Defendants' Ability to Withstand a Greater Judgment .................16

       e.      The Settlement Amount is Reasonable in View of the Best Possible Recovery and the Risks of Litigation .............................16

IV.     THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE ........................................18

V.      THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT ....................................................................19

VI.    NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ......................................................................................................20

VII.   CONCLUSION...........................................................................................................................22

4813-7379-8347.v1

# TABLE OF AUTHORITIES

**Page**

### CASES

*Castagna v. Madison Square Garden, L.P.*,
   No. 09-CV-10211(LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ..........................16

*Charron v. Pinnacle Group NY LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012),
   *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013) ...........................................7

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534
   (S.D.N.Y. Oct. 16, 2019) ................................................................................................. *passim*

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
   No. 1:08-cv-03612-RJS, slip op.
   (S.D.N.Y. Apr. 5, 2013) ..........................................................................................................12

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
   (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) .........................................................................................14, 16

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) ........................................................................................................6

*Cornwell v. Credit Suisse Grp.*,
   No. 1:08-cv-03758(VM), slip op.
   (S.D.N.Y. July 20, 2011) .........................................................................................................12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ....................................................................................................5, 7

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ............................................................................................. *passim*

*Dornberger v. Metro Life Ins. Co.*,
   203 F.R.D. 118 (S.D.N.Y. 2001) .............................................................................................22

*Hicks v. Morgan Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792
   (S.D.N.Y. Oct. 24, 2005) .........................................................................................................10

**Page**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................3, 7, 10, 18

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987) ...................................................................16

*In re AOL Time Warner Inc. Sec & "ERISA" Litig.*,
No. 02 Civ. 5575(SWK), 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) ........................................................................................8

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..............................................................14, 17

*In re BHP Billiton, Sec. Litig*,
No. 1:16-cv-01445-NRB, 2019 WL 1577313
(S.D.N.Y. Apr. 10, 2019) ......................................................................................12

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ......................................................7, 14, 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400(CM)(PED), 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ........................................................................................8

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................5, 8, 15, 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 WL 7323417
(S.D.N.Y. Dec. 19, 2014) ......................................................................................15

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ..........................................................................20

*In re Namenda Direct Purchaser Antitrust Litig.*,
No. 15 Civ 7488 (CM), 2020 WL 2749223
(S.D.N.Y. May 27, 2020) ........................................................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ..............................................................................5

4813-7379-8347.v1

**Page**

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173(RPP), 2008 WL 1956267
  (S.D.N.Y. May 1, 2008) ..................................................................................................16

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695(CM), 2007 WL 4115809
  (S.D.N.Y. Nov. 7, 2007) ............................................................................................14, 19

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................................18

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000),
  *aff'd*, 264 F. 3d 131 (2d Cir. 2001) ..................................................................................9

*Landmen Partners Inc. v. Blackstone Grp. L.P.*,
  No. 08-cv-03601-HB-FM, slip op.
  (S.D.N.Y. Dec. 18, 2013)................................................................................................12

*Martignago v. Merrill Lynch & Co., Inc.*,
  No. 11-cv-03923-PGG, 2013 WL 12316358
  (S.D.N.Y. Oct. 3,2013) ..................................................................................................14

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713(PGG), 2010 WL 2399328
  (S.D.N.Y. Mar. 3, 2010) ...........................................................................................3, 7, 16

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972).............................................................................................17

*Padro v. Astrue*,
  No. 11-CV-1788(CBA)(RLM), 2013 WL 5719076
  (E.D.N.Y. Oct. 18, 2013) ................................................................................................21

*Pelzer v. Vassalle*,
  655 F. Appx. 352 (6th Cir. 2016).....................................................................................12

*Stougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..............................................................................10

*Thompson v. Metro Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .........................................................................................5

- v -

**Page**

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) .........................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................3, 7, 20

*Yuzary v. HSBC Bank, USA, N.A.*,
    No. 12 Civ. 3693(PGG), 2013 WL 5492998
    (S.D.N.Y. Oct. 2, 2013) ......................................................................5, 12, 14

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23.............................................................................................................20
    Rule 23(a)..........................................................................................................19
    Rule 23(b)(3)......................................................................................................19
    Rule 23(c)..........................................................................................................16
    Rule 23(c)(2)(B)...........................................................................................20, 21
    Rule 23(e)................................................................................................... *passim*
    Rule 23(e)(1)......................................................................................................20
    Rule 23(e)(2)............................................................................................... *passim*
    Rule 23(e)(2)(A)...................................................................................................6
    Rule 23(e)(2)(B)...................................................................................................6
    Rule 23(e)(2)(C)(i).........................................................................................8, 11
    Rule 23(e)(2)(C)(ii)............................................................................................11
    Rule 23(e)(2)(C)(iii)...........................................................................................12
    Rule 23(e)(2)(C)(iv)...........................................................................................13
    Rule 23(e)(2)(D).................................................................................................13
    Rule 23(e)(3)..................................................................................................4, 13

**SECONDARY AUTHORITIES**

Laarni T. Bulan and Laura E. Simmons,
    *Securities Class Action Settlements: 2019 Review and Analysis*
    (Cornerstone Research 2020).............................................................................17

4813-7379-8347.v1

Pursuant to Rule 23(e) of the Federal Rules of Federal Procedure, Lead Plaintiff City of Birmingham Retirement and Relief System ("Lead Plaintiff" or "Plaintiff"), on behalf of itself and the Class, respectfully submits this memorandum of law in support of its motion for final approval of the $40,000,000 Settlement (the "Settlement Amount") reached in this action (the "Litigation") and approval of the Plan of Allocation (the "Plan").  The terms of the Settlement are set forth in the Stipulation of Settlement dated May 5, 2020 (the "Stipulation").  ECF No. 157.[1]

## I.     INTRODUCTION

Lead Plaintiff's $40 million recovery is the result of its rigorous two-year effort to prosecute this highly contested litigation, in addition to extensive arm's-length settlement negotiations by its experienced and knowledgeable counsel, overseen by a nationally renowned mediator.   The Settlement represents a very good result for the Class and easily satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in the Second Circuit decision of *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

The Settlement is especially beneficial to the Class in light of the substantial litigation risks Lead Plaintiff faced.  The gravamen of Lead Plaintiff's claims was that, during the Class Period, Defendants made materially false and misleading statements concerning BRF's compliance with Brazil's health and safety laws and regulations in the poultry production process, and engaged in criminal and corrupt conduct to conceal its malfeasance.  While Lead Plaintiff believes in the merit of its claims, Defendants had strong and credible arguments that: (1) there is no requirement that

---

[1]   All capitalized terms not otherwise defined herein shall have the meanings set forth in the Stipulation and the Declaration of David A. Rosenfeld in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Rosenfeld Decl."), submitted herewith.  Citations are omitted and emphasis is added throughout unless otherwise noted.

issuers disclose uncharged, unadjudicated wrongdoing, but that it did nevertheless properly disclose the investigation and attendant risks; (2) Lead Plaintiff could not establish loss causation prior to July 25, 2015, or after March 17, 2017; and (3) Lead Plaintiff could not establish the critical element of scienter.  Indeed, at the time the Settlement was reached, Defendants' motion to dismiss Lead Plaintiff's Fourth Amended Class Action Complaint for Violations of the Federal Securities Laws (the "FAC") was pending before the Court.[2]

Lead Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement, as they had engaged in multiple rounds of briefing in connection with Defendants' motions to dismiss, including pre-motion letters, and two rounds of mediation.  Based on this experience, Lead Plaintiff knew that Defendants' motion to dismiss the FAC might have succeeded, resulting in no recovery at all.  Moreover, a skilled and highly reputable securities litigation mediator – Hon. Layn R. Phillips (Ret.) – also assessed the risks and merits of Lead Plaintiff's claims, and issued a proposal indicating those claims were worth $40 million.

Given the risks to proceeding and the excellent recovery obtained, Lead Plaintiff respectfully submits that the $40 million Settlement and the Plan of Allocation – which was prepared with the assistance of Lead Plaintiff's damages consultant, and is substantially similar to numerous other such plans that have been approved in this District – are fair and reasonable in all respects.  Accordingly, Lead Plaintiff requests that the Court approve them under Rule 23(e) of the Federal Rules of Civil Procedure.

---

[2]   Defendants further maintained that even if the FAC survived dismissal, Lead Plaintiff would face serious difficulties conducting discovery in Brazil, where third party discovery is unenforceable under Brazilian law.  Defendants also would continue to argue that the Court lacked jurisdiction over a number of the defendants named in Lead Plaintiff's various complaints.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

To avoid repetition, Lead Plaintiff respectfully refers the Court to the accompanying Rosenfeld Declaration for a detailed discussion of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Plaintiff and its counsel during the course of the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement.

## III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

### A.     The Law Favors and Encourages Settlements

"Courts examine procedural and substantive fairness in light of the 'strong judicial policy favoring settlements' of class action suits." *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation."). Thus, the Second Circuit has instructed that, while a court should not give "rubber stamp approval" to a proposed settlement, it should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

As set forth below, the $40 million Settlement here, particularly in light of the significant litigation risks Lead Plaintiff faced, is manifestly reasonable, fair, and adequate under all of the pertinent factors courts use to evaluate a settlement. Accordingly, the Settlement warrants final approval from this Court.

## B.     The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. Rule 23(e)(2), as recently amended, provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable and adequate" such that final approval is warranted:

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;
>
> (C)     the relief provided for the class is adequate, taking into account:
>
>> (i)      the costs, risks and delay of trial and appeal;
>>
>> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv)     any agreement required to be identified under Rule 23(e)(3); and
>
> (D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors (the "*Grinnell* factors"), which overlap with the Rule 23(e)(2) factors, when determining whether to approve a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of

- 4 -

all of the attendant risks of litigation. *Grinnell*, 495 F.2d at 463; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (explaining that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis"). *See also In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2020 WL 2749223, at *2-*3 (S.D.N.Y. May 27, 2020).

For a settlement to be deemed substantively and procedurally fair, reasonable and adequate, not every factor need be satisfied. "[R]ather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). Additionally, "[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Yuzary v. HSBC Bank, USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (courts should not substitute their "business judgment for that of counsel, absent evidence of fraud or overreaching").

Under the recently amended Rule 23(e)(2), courts now "must assess at the preliminary approval stage whether the parties have shown that the court will likely find that the [Rule 23(e)(2)] factors weigh in favor of final settlement approval." *Payment Card Interchange*, 330 F.R.D. at 28. As set forth in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for (I) Preliminary Approval of Class Action Settlement, (II) Certification of the Class, and (III) Approval of Notice to the Class (ECF No. 156 at 15-18), as acknowledged by this Court's Preliminary Approval Order (ECF No. 160), and as set forth further below, both the Rule 23(e)(2) factors and the *Grinnell* factors clearly weigh in favor of final approval of the Settlement.

- 5 -

**C.**    **The Proposed Settlement Is Procedurally and Substantively Fair, Adequate, and Reasonable**

**1.**    **The Settlement Satisfies the Requirements of Rule 23(e)(2)**

**a.**    **Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

The determination of adequacy "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation.'" *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Here, Lead Plaintiff's interests are not antagonistic to, and in fact are directly aligned with, the interests of other Members of the Class. Additionally, Lead Plaintiff and Lead Counsel have adequately represented the Class by zealously prosecuting this action, including by, among other things, conducting an extensive investigation of the relevant factual events, including regulatory and criminal proceedings in Brazil, drafting four highly detailed amended complaints, retaining Brazilian counsel to assist in the prosecution of the case, engaging in two rounds of briefing to oppose Defendants' motions to dismiss and respond to Defendants' letter briefs, and preparing for and participating in multiple rounds of hard-fought mediation sessions before Judge Phillips. Rosenfeld Decl., ¶¶7-8, 62. Through each step of the Litigation, Lead Plaintiff and Lead Counsel have strenuously advocated for the best interests of the Class. Lead Plaintiff and Lead Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

**b.**    **The Proposed Settlement Was Negotiated at Arm's Length Before an Experienced Mediator**

Lead Plaintiff satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the parties' counsel before a neutral mediator, resulting in the parties' acceptance of the mediator's proposal, for which there was no hint of collusion. Rosenfeld Decl.,

- 6 -

¶¶41, 54.  Indeed, the use of the mediation process provides compelling evidence that the Settlement is not the result of collusion.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"); *McMahon*, 2010 WL 2399328, at *4 ("Arm's length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process.") (citing *Wal-Mart Stores*, 396 F.3d at 116); *D'Amato*, 236 F.3d at 85 (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").  Moreover, the Settlement negotiations were "carried out under the direction of Lead Plaintiff[], [a] sophisticated institutional investor[] whose involvement suggests procedural fairness."  *Facebook*, 343 F. Supp. 3d at 409.

It is well-settled in this Circuit that "a class action settlement enjoys a strong presumption of fairness where it is the product of arm's-length negotiations concluded by experienced, capable counsel."  *Advanced Battery*, 298 F.R.D. at 175 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Charron v. Pinnacle Group NY LLC*, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) ("Recommendations of experienced counsel are entitled to great weight in evaluating a proposed settlement in a class action because such counsel are most closely acquainted with the facts of the underlying litigation."), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d. Cir. 2013); *McMahon*, 2010 WL 2399328, at *4 (settlement was "procedurally fair, reasonable, adequate and not a product of collusion" where it was reached after "arm's-length negotiations between the parties").  Accordingly, this factor weighs heavily in favor of the Court issuing final approval of the Settlement.

4813-7379-8347.v1

### c.      The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Rule 23(e)(2)(C)(i) and the first, fourth and fifth *Grinnell* factors overlap, as they address the substantive fairness of the Settlement in light of the risks posed by continuing litigation.  As set forth below, these factors weigh in favor of final approval.

### (1)      The Risks of Establishing Liability at Trial

In considering this factor, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Glob. Crossing*, 225 F.R.D. at 459.  As a preliminary matter, the significant unpredictability and complexity posed by securities class actions generally weigh in favor of final approval.  Indeed, "[i]n evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631(CM)(SDA), 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400(CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same); *In re AOL Time Warner Inc. Sec & "ERISA" Litig.*, No. 02 Civ. 5575(SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").  Although Lead Plaintiff and Lead Counsel firmly believe that the claims asserted in the Litigation are meritorious, and that they would prevail at trial, further litigation against Defendants posed risks that made any recovery uncertain.

As set forth above and in the Rosenfeld Declaration, at the time of the Settlement, Defendants' motion to dismiss the FAC was pending.[3]  If it had been granted, it is unknown if Lead

---

[3]      Likewise, Lead Plaintiff had moved for approval to serve certain non-U.S. Defendants by alternative means.  That motion was granted in part and denied in part.  ECF No. 77.  Rosenfeld Decl., ¶¶31, 35-36, 40.

Plaintiff would be provided any further opportunity to amend its complaint. Defendants have vigorously contested their liability and have denied and continue to deny each and every claim and allegation of wrongdoing. Specifically, Defendants have argued that Lead Plaintiff has not alleged any material misstatements or omissions that Defendants had a duty to disclose, and that Lead Plaintiff had not sufficiently alleged Defendants' scienter. Rosenfeld Decl., ¶¶68-76. *See, e.g.*, *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 327 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 264 F. 3d 131 (2d Cir. 2001). In light of the difficulty of pleading falsity, materiality, scienter, and loss causation in securities fraud class actions under the high bar of the PSLRA, Lead Plaintiff knew it faced a substantial risk that the Court would grant Defendants' motion to dismiss, leaving Plaintiff with no recovery at all.

### (2)      The Risks of Establishing Loss Causation and Damages at Trial

The risks of establishing liability apply with equal force to establishing damages. Here, Defendants argued that their alleged misstatements or omissions were not the cause of the decline in BRF ADRs. Similarly, they argued that Lead Plaintiff had alleged an improperly-long class period, and that if the case proceeded, the class period would have to be significantly shorter, reducing recoverable damages. Had litigation continued, Plaintiff would have relied heavily on expert testimony to establish loss causation and damages, likely leading to a battle of the experts at trial and a *Daubert* challenge. If the Court were to determine that one or more of Lead Plaintiff's experts should be excluded from testifying at trial, Lead Plaintiff's case would become much more difficult to prove.

In light of the very significant risks Lead Plaintiff faced at the time of Settlement with regard to establishing liability and damages this factor clearly weighs in favor of final approval.

- 9 -

**(3)**      **The Settlement Eliminates the Additional Costs<br>and Delay of Continued Litigation**

The anticipated complexity, cost, and duration of the Litigation would be considerable.  *See*

*Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are

critical factors in evaluating the reasonableness of a settlement").  Indeed, if not for the Settlement,

the Litigation, which has already been pending for well over two years, would have continued

through the motion to dismiss, and fact and expert discovery.  Defendants contend that much of the

documentary evidence relevant to this case is in Brazil in the possession of third parties (or unserved

defendants), and the taking of discovery from such non-parties is unenforceable under Brazilian law.

Documents, if obtained, would have to be translated.  *See Christine Asia*, 2019 WL 5257534, at \*10

("As a practical matter, this case would be particularly onerous and expensive to litigate given that it

involves litigating against a foreign defendant.").  Several defendants remain unserved.[4]  The

subsequent motions for class certification and summary judgment, as well as the preparation for

what would likely be a multi-week trial, would have caused the action to persist for several years

more before Plaintiff could receive any recovery.  Such a lengthy and highly uncertain process

would not serve the best interests of the Class compared to the immediate, certain monetary benefits

of the Settlement.  *See Stougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("even if a

shareholder or class member was willing to assume all the risks of pursuing the action through

further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of

the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v.*

---

[4]      COVID-19 will cause further delays.  Rosenfeld Decl., ¶77.  The virus has negatively impacted BRF's operations, as the number of infections and fatalities in Brazil is quite high.  China recently announced that it is suspending poultry imports from BRF due to virus concerns.  *Id.*  Should discovery commence, it would be significantly delayed until the virus is under control and normal business operations resume.

- 10 -

*Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

Accordingly, the Rule 23(e)(2)(C)(i) factor, as well as the first, fourth and fifth *Grinnell* factors, weigh in favor of final approval.

> ### d.  The Proposed Method for Distributing Relief Is Effective

With respect to Rule 23(e)(2)(C)(ii), Lead Plaintiff and Lead Counsel have taken appropriate steps to ensure that the Class is notified about the Settlement.  Pursuant to the Preliminary Approval Order (ECF No. 160), more than 61,500 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶11-12, submitted herewith.  Additionally, a settlement-specific website was created where key Settlement documents were posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *Id.*, ¶14.  Class Members have until October 2, 2020 to object to the Settlement or request exclusion from the Class.  While that date has not yet passed, to date there have been no objections to the Settlement, or any requests for exclusion.  *Id.*, ¶16.  This claims process is similar to that typically used in securities class action settlements.  *See Christine Asia*, 2019 WL 257534, at *14 ("[t]his type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective").  This factor therefore supports final approval.

> **e.      Lead Counsel's Request for Attorneys' Fees Is Reasonable**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the Notice, and as discussed in Lead Counsel's fee memorandum, Lead Counsel seeks an award of attorneys' fees in the amount of 27.5% of the Settlement Amount, and expenses in the amount of $94,821.84, in addition to interest on both amounts.

As set forth in Lead Counsel's fee memorandum, this request is in line with, and in some cases below, recent fee awards in this District in similar common-fund cases.[5] *See, e.g.*, *Cornwell v. Credit Suisse Grp.*, No. 1:08-cv-03758(VM), slip op. at 2 (S.D.N.Y. July 20, 2011) (awarding 27.5% of settlement, plus expenses); *In re BHP Billiton*, *Sec. Litig*, No. 1:16-cv-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019); *Landmen Partners Inc. v. Blackstone Grp. L.P.*, No. 08-cv-03601-HB-FM, slip op. at 5 (S.D.N.Y. Dec. 18, 2013) (awarding 33.33% of settlement, plus expenses); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 1:08-cv-03612-RJS, slip op. at 1 (S.D.N.Y. Apr. 5, 2013); *Yuzary*, 2013 WL 5492998, at *10 (finding 31% fee award "consistent with the norms of class litigation in this circuit").[6]

Because Lead Counsel's fee request is reasonable, and because Lead Plaintiff has ensured that the Class is fully apprised of the terms of the proposed award of attorneys' fees, including the timing of such payments, this factor supports final approval of the Settlement.

---

[5]   All unreported authorities are attached as Exhibits A-C hereto.

[6]   The Stipulation provides that any attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel when the Court executes the Judgment and an Order awarding such fees and expenses. *See* Stipulation, ¶6.2; *see also Pelzer v. Vassalle*, 655 F. Appx. 352, 365 (6th Cir. 2016) (finding the "quick-pay provision" did "not harm the class members in any discernible way, as the size of the settlement fund available to the class will be the same regardless of when the attorneys get paid").

**f.      The Parties Have No Other Agreements Besides Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the consideration of any agreement required to be disclosed under Rule 23(e)(3).  As disclosed in connection with Lead Plaintiff's motion for preliminary approval of the Settlement, ECF No. 156 at 7, the parties have entered into a standard supplemental agreement providing that, in the event Class Members with a certain aggregate amount of valid claims opt out of the Settlement, Defendants shall have the option to terminate the Settlement. Because this agreement has no bearing on the fairness of the Settlement, this factor weighs in favor of final approval.  *See Christine Asia*, 2019 WL 5257534, at *15 (stating that opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

**g.      The Settlement Ensures Class Members Are Treated Equitably**

Rule 23(e)(2)(D), the final factor, considers whether Class Members are treated equitably. As discussed further below in Part IV, Lead Counsel developed the Plan of Allocation in consultation with its damages consultant to treat Class Members equitably relative to each other by: (i) taking into account the timing of their BRF ADR purchases, acquisitions, and sales; and (ii) providing that each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund based on their recognized losses.  Lead Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund as every other Class Member.  This factor therefore merits granting final approval of the Settlement.

Based on the foregoing, Lead Plaintiff and Lead Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the Settlement.

- 13 -

### 2. The Settlement Satisfies the Remaining *Grinnell* Factors

#### a. The Lack of Objections to Date Supports Final Approval

The reaction of the Class to the Settlement "is considered perhaps the most significant factor to be weighed in considering its adequacy," *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007), such that the "absence of objections may itself be taken as evidencing the fairness of a settlement." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

While the deadline to submit objections and exclusions has not yet passed, no objections have been received to date. Nor have any requests for exclusion has been received. Murray Decl., ¶16. This positive reaction of the Class supports approval of the Settlement. *See Yuzary*, 2013 WL 5492998, at *6 (the "favorable response" from the class "demonstrates that the class approves of the settlement and supports final approval"); *Facebook*, 343 F. Supp. 3d at 410 ("[t]he overwhelming positive reaction – or absence of a negative reaction – weighs strongly in favor" of final approval).

#### b. Lead Plaintiff Had Sufficient Information to Make an Informed Decision Regarding the Settlement

Under the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiff's causes of action for purposes of settlement.'" *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012); *Martignago v. Merrill Lynch & Co., Inc.*, No. 11-cv-03923-PGG, 2013 WL 12316358, at *6 (S.D.N.Y. Oct. 3, 2013) ("The pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'").

"To satisfy this factor, parties need not have even engaged in formal or extensive discovery." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *7 (S.D.N.Y. Dec. 19, 2014) (noting that in cases brought under the PSLRA, discovery cannot commence until the motion to dismiss is denied); *see also Glob. Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a perquisite; the question is whether the parties had adequate information about their claims.").

Lead Plaintiff and Lead Counsel had sufficient information to assess the adequacy of the Settlement. As detailed in the Rosenfeld Declaration, Lead Plaintiff and Lead Counsel negotiated the Settlement only after conducting an extensive factual investigation, which included the review of BRF's SEC filings, news reports, and other publicly available information, including documents and pleadings from ongoing Brazilian investigations and litigation. *See generally* Rosenfeld Decl. Additionally, Lead Counsel retained a consultant on the issue of damages. *Id.* Lead Counsel's thorough investigation continued with the drafting of four detailed amended complaints, and vigorously opposing multiple rounds of motions to dismiss. Lead Plaintiff also participated in two hard-fought, mediation sessions with Defendants, overseen by an experienced and nationally renowned mediator, which ultimately resulted in the Settlement. *Id.* During those sessions, Defendants' counsel pressed the arguments raised in their motions to dismiss, in addition to further arguments they intended to make if the case were to progress. *Id.*

Thus, by the time of the Settlement, Lead Plaintiff was well-versed in the strengths and weaknesses of the case. This factor weighs in favor of final approval.

### c. Maintaining Class-Action Status Through Trial Presents a Substantial Risk

Lead Plaintiff's ability to maintain class-action status through trial presented a substantial risk in this Litigation. Although Lead Plaintiff believes it would have prevailed on a motion to certify the class, Defendants were poised to vigorously oppose the motion. Defendants had already

- 15 -

argued that Lead Plaintiff's proposed class period was improperly pled, with respect to both the start date and the end date.  Rosenfeld Decl., ¶¶74-75.  Moreover, even if the motion had been granted, Defendants could still have moved to decertify the Class or trim the Class Period before trial or on appeal, as class certification may be reviewed at any stage of the litigation.  *See Christine Asia*, 2019 WL 5257534, at *13 (stating that this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"); Fed. R. Civ. P. 23(c) (authorizing a court to decertify a class at any time).  "The risk of maintaining class status throughout trial [] weighs in favor of final approval."  *McMahon*, 2010 WL 2399328, at *5.

### d.    Defendants' Ability to Withstand a Greater Judgment

This factor is not dispositive when all other factors favor approval.  Even if Defendants could have withstood a greater judgment, however, a "'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'"  *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211(LTS)(HP), 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011); *see also Aeropostale*, 2014 WL 1883494, at *9 (courts "generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement").  A "defendant is not required to 'empty its coffers' before a Settlement can be found adequate."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).  Here, BRF could endure a larger judgment, but all other factors favor final approval.

### e.    The Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

The adequacy of the amount offered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762

(E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  A court need only determine whether the settlement falls within a "range of reasonableness" that "recognizes the uncertainties of law and fact" in the case and "the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Glob. Crossing*, 225 F.R.D. at 461 ("the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery").

Here, "[b]ecause Plaintiff[] face[s] serious challenges to establishing liability, consideration of Plaintiff['s] best possible recovery must be accompanied by the risk of non-recovery."  *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270 (stating this *Grinnell* factor is "a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery").  Indeed, at the time of the parties' Settlement negotiations, Defendants' motion to dismiss was pending, and the outcome of the motion was uncertain. Likewise, the Settlement represents a recovery of between almost 14.2% and 103% of reasonably recoverable damages, an amount that exceeds median recoveries in cases of this size.  *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2019 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2020).

Moreover, the $40 million Settlement Amount "was agreed upon only after careful consideration, both by competent lead counsel and by [a neutral mediator]" – all of whom concluded the Settlement represented a very good recovery for the Class in light of the substantial litigation risks Plaintiff faced.  *See Facebook*, 343 F. Supp. 3d at 414; *see also id.* (finding that even if the settlement "amounts to one tenth – or less – of Plaintiff's potential recovery," such a recovery is within "the range of reasonableness" where "the risks of a zero – or minimal – recovery scenario are real.").  This factor weighs in favor of final approval.

- 17 -

IV.    **THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE**

The standard for approval of the Plan is the same as the standard for approving the Settlement as a whole: namely, "it must be fair and adequate."  *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).  "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"  *Advanced Battery*, 298 F.R.D. at 180; *see also Christine Asia*, 2019 WL 5257534, at *15-*16.

Here, as set forth in the Notice, the Plan was prepared with the assistance of Lead Plaintiff's damages consultant and has a rational basis, as it is based on the same methodology underlying Lead Plaintiff's measure of damages: the amount of artificial inflation in the price of BRF ADRs during the Class Period.  *See Facebook*, 343 F. Supp. 3d at 414 (plan of allocation was fair where it was "prepared by experienced counsel along with a damages expert – both indicia of reasonableness").  This is a fair method to apportion the Net Settlement Fund among Authorized Claimants, as it is based on, and consistent with, the claims alleged.

The Net Settlement Fund will be distributed to Authorized Claimants who timely submit valid Proofs of Claim that are approved for payment from the Net Settlement Fund under the Plan. Rosenfeld Decl., ¶¶82-84.  The Plan treats all Class Members equitably, as everyone who submits a valid and timely Proof of Claim, and does not otherwise exclude himself, herself, or itself from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants, so long as such Authorized Claimant's payment amount is $10.00 or more.  *See id.*; *see also* Murray Decl., Ex. A (Notice) at 10.

Lead Plaintiff and Lead Counsel believe that the Plan is fair and reasonable, and respectfully submit that it should be approved by the Court. Indeed, notably, there have been no objections to the Plan to date, which supports the Court's approval. *See Veeco*, 2007 WL 4115809, at *7.

## V. THE COURT SHOULD FINALLY CERTIFY THE CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Class for settlement purposes only so that notice of the Settlement, the Settlement Hearing, and the rights of Class Members to object to the Settlement, request exclusion from the Class, or submit Proofs of Claim, could be issued. *See* ECF No. 156 at 18-23. In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiff had met the requirements for certification of the Class for purposes of settlement. ECF No. 160 at 2. Specifically, in the Preliminary Approval Order, the Court preliminarily certified a class of "all Persons who purchased or otherwise acquired BRF S.A. American Depository Receipts ("ADRs") between April 4, 2013 and March 5, 2018, inclusive." *Id.* In addition, the Court preliminarily certified Lead Plaintiff as class representative and Lead Counsel as class counsel. *Id.* at 3.

Since the Court's entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel.

- 19 -

## VI.   NOTICE TO THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1).  Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores*, 396 F.3d at 114; *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) (citing *Wal-Mart Stores*, 396 F.3d at 114).

The Notice and the method used to disseminate the Notice to potential Class Members satisfy these standards.  The Court-approved Notice and Proof of Claim (the "Notice Packet") amply inform Class Members of, among other things: (i) the pendency of the Litigation; (ii) the nature of the Litigation and the Class' claims; (iii) the essential terms of the Settlement; (iv) the proposed Plan; (v) Class Members' rights to request exclusion from the Class or object to the Settlement, the Plan, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Class Members; and (vii) information regarding Lead Counsel's motion for an award of attorneys' fees and expenses. The Notice also provides specific information regarding the date, time, and place of the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim; (ii) requesting exclusion from the Class; and (iii) objecting to any aspect of the Settlement, including the proposed Plan and the request for attorneys' fees and expenses.

The Notice also contains all the information required by the PSLRA, including: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case; (iii) a statement indicating the attorneys' fees and expenses sought; (iv) identification and contact information of counsel; and (v) a brief statement explaining the reasons why the parties are proposing the Settlement.

In accordance with the Preliminary Approval Order, Gilardi & Co. LLC ("Gilardi"), the Court-approved Claims Administrator, commenced the mailing of the Notice Packet by First-Class Mail to potential Class Members, brokers, and nominees on June 5, 2020.  As of September 17, 2020, more than 61,500 copies of the Notice Packet have been mailed.  Murray Decl., ¶11.  Gilardi also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire*.  *Id.*, ¶12, Ex. C.  Additionally, Gilardi posted the Notice Packet, as well as other important documents, on the website maintained for the Settlement.  *Id.*, ¶14.

The combination of individual First-Class Mail to all potential Class Members who could be identified with reasonable effort, supplemented by mailed notice to brokers and nominees and publication of the Summary Notice in a relevant, widely-circulated publication and internet newswire, was "the best notice . . . practicable under the circumstances."   Fed. R. Civ. P. 23(c)(2)(B); *see also Padro v. Astrue*, No. 11-CV-1788(CBA)(RLM), 2013 WL 5719076, at *3 (E.D.N.Y. Oct. 18, 2013) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notices, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Indeed, this method of providing notice has been routinely approved for use in securities class actions and other similar class actions. *E.g.*, *Christine Asia*, 2019 WL 5257534, at *16 (finding that direct First Class Mail combined with print and Internet-based publication of Settlement documents

- 21 -

was "the best notice practicable under the circumstances"); *Dornberger v. Metro Life Ins. Co.*, 203

F.R.D. 118, 123-24 (S.D.N.Y. 2001) (same).

## VII.   CONCLUSION

The $40 million Settlement obtained by Lead Plaintiff and Lead Counsel represents a

substantial recovery for the Class, particularly in light of the significant litigation risks Plaintiff

faced, including the very real risk of the Class receiving no recovery at all.  For the foregoing

reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan

as fair, reasonable, and adequate.

DATED:  September 18, 2020                    Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             DAVID A. ROSENFELD
                                             MARIO ALBA JR.
                                             CHRISTOPHER T. GILROY

                                                     s/David A. Rosenfeld
                                             DAVID A. ROSENFELD

                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)
                                             srudman@rgrdlaw.com
                                             drosenfeld@rgrdlaw.com
                                             mabla@rgrdlaw.com
                                             cgilroy@rgrdlaw.com

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             ELLEN GUSIKOFF STEWART
                                             655 West Broadway, Suite 1900
                                             San Diego, CA 92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)
                                             elleng@rgrdlaw.com

                                             Lead Counsel for Plaintiff

4813-7379-8347.v1

**CERTIFICATE OF SERVICE**

I, David A. Rosenfeld, hereby certify that on September 18, 2020, I authorized a true and

correct copy of the foregoing document to be electronically filed with the Clerk of the Court using

the CM/ECF system, which will send notification of such public filing to all counsel registered to

receive such notice.


s/ David A. Rosenfeld
DAVID A. ROSENFELD
